RAILROAD   *v.*   DONOVAN.

(*Jackson.*   April 25, 1900.)

1. RAILROADS.   *Right of way defined.*

The deed, not its charter, determines extent and width of a railroad company's right of way, where the company obtains, or accepts, from the owner of land through which its road passes, a deed, long acquiesced in by both parties under a construction by the Courts that excluded its charter rights, which conveys to the company for its purposes a portion of land different from that prescribed by its charter, being wider at some places and narrower at others; and the conditions, reservations, and mutual obligations created by said deed must be observed by the parties, notwithstanding the conflicting provisions of the company's charter.   (*Post, pp. 466–485.*)

2. SAME.   *Same.*

In land appropriated by deed or charter provision to right of way for a railroad, the railroad company has an easement—the right to use it for all lawful and necessary railroad purposes, but the fee remains in the original owner, with the right to possess and use, in a lawful manner, any part of the right of way not occupied, or in actual use, by the railroad company.   The possession and use of the property by neither party is adverse to the other unless the same is obtruded beyond his own sphere and rights upon those of the other party. (*Post, p. 477.*)

Cases cited: Railroad *v.* Telford, 89 Tenn., 293; Railroad *v.* French, 100 Tenn., 209; Railroad *v.* McReynolds, 48 S. W. Rep., 258 (Ch. App.).

3. SAME.   *Same.*

It is not an invasion of the railroad company's rights, nor an unlawful or adverse use of the land appropriated to its right of way, for the owner of the fee to enter on the premises and erect inclosures and platforms, plant trees and flowers, and open artificial lakes, provided these do not immediately interfere with the company's operations, or necessary use of the

20 P—30

premises, especially if the right of way is held under a deed that reserves to the grantor the free joint use of the premises for the benefit of his hotel erected on adjoining property. (*Post, pp. 477–481.*)

4. SAME. *Same.*

The Courts will not undertake to make other than a general declaration of the rights of the parties under a deed conveying a right of way to a railroad company, where there does not appear to be any necessity for more specific present relief. (*Post, pp. 482-484.*)

5. RES ADJUDICATA. *Construction of deed.*

A decree construing a deed and fixing the meaning of its calls is conclusive upon the parties in subsequent litigation over the same matter. (*Post, pp. 481, 482.*)

FROM GIBSON.

Appeal from Chancery Court of Gibson County. JOHN S. COOPER, Ch.

WM. M. MCCALL and C. G. BOND for Railroad.

DEASON & RANKIN for Donovan.

MCALISTER, J. This bill was filed by complainant company to enjoin the defendant from encroaching upon the railroad's right of way. The bill alleged that defendant, Donovan, was in the act of fencing up the right of way to a point within fifteen or twenty feet of the center of the track and extending a distance of six hundred and fifty feet parallel with the track. Complainant claims

this right of way, first, under the authority of its charter, granted by the Legislature of this State on the 28th of January, 1848; second, by virtue of a decree of the Chancery Court at Humboldt, passed on the 8th of January, 1874, in the case of the *Memphis & Ohio Railroad Company* .(which is now the L. & N. R. R. Co.) v. *J. N. Lannon et al.,* wherein it was decreed that the Mobile & Ohio Railroad Company was entitled to a right of way fifty feet in width on the west side of its track for a distance of six hundred and fifty feet.

The defendant answered the bill, in which he asserted title to the strip of land in controversy, first, by the statute of limitations, and, second by virtue of the decree pronounced in the cause already mentioned, his predecessors in title, as well as the Mobile & Ohio Railroad Company, being parties to this suit. Defendant admitted that he was about to fence the strip of land, as alleged in the bill, but claimed that complainant company had no interest in the property, and justified his action under the titles already mentioned.

A large volume of testimony was taken in the cause, and at the January term, 1900, of the Chancery Court at Humboldt the .Chancellor decreed substantially as follows, viz.:

"The Court is of opinion that the rights of the Mobile & Ohio Railroad Company in and to

said strip of land are acquired and held under and by virtue of said deed referred to, and the decree above set out setting up said deed, and it is so adjudged and decreed, and the Court is further of opinion that all the rights, claims, and interests of the defendant, Dan Donovan, in and to said strip of land is likewise acquired and had under and by virtue of said deed and said decree, and his title papers, which are limited by the same, and the same is so decreed.

"Now, touching the rights of the Mobile & Ohio Railroad Company and the defendant, Dan Donovan, and his successors in title to said hotel property in and to said strip of land under said deed as set up in said decree, and under said decree, the terms of which are binding upon both, the Court is of opinion that in the description of the west boundary line of said strip of land, wherein the description is in these words, 'Then southerly to the Memphis & Ohio Railroad,' that these words mean parallel with said Mobile & Ohio Railroad and fifty feet distant from the center line of the same on the west, but to so run as not to interfere with the said hotel buildings, not only along the line of the Memphis & Ohio Railroad, but along the Mobile & Ohio Railroad as well; and that is to say, that under said deed as set up in said decree, and under and by terms of said deed and decree, the Mobile

& Ohio Railroad Company is given and has an easement in said strip of land for the full width of fifty feet for railroad purposes, and freely and fully to use the same for all reasonable railroad purposes, but that said easement and said use is subservient to the like right of the owners of said hotel property to the full, free, and uninterrupted use of the same for free and uninterrupted egress, ingress, and regress to and from the said hotel, and not to be interrupted in the same by the Mobile & Ohio Railroad Company, and the same is so adjudged and decreed."

The Chancellor also held that the holding of neither party had been adverse, and that neither party had thereby acquired the dominant estate. From this decree the defendant prayed and perfected a special appeal, assigning sixteen different grounds. The complainant also filed the record for writ of error.

It is assigned as error by complainant that the Chancellor decreed that the Mobile & Ohio Railroad Company acquired no title to said property by virtue of its charter, and that its charter rights were abandoned under the Osburn deed and the decree of 1874 in the Lannon case. The facts on this branch of the case are that in August, 1857, one John Osburn was the owner of the tract of land which comprises the four angles at the intersection of the Mobile & Ohio

Railroad Company and the Louisville & Nashville Railroad Company at Humboldt. At the date last mentioned the Mobile & Ohio Railroad Company, under the provisions of its charter and with the consent of John Osburn, the owner of the land, proceeded to lay off a right of way one hundred feet in width at the point where the crossing of the two roads is now located. About this date John Osburn began the erection of a hotel in the corner of the northwest angle, near the right of way of the Mobile & Ohio Railroad Company. Contemporaneously with these constructions, the Memphis & Ohio Railroad Company also proposed to build a line, which crossed the Mobile & Ohio Railroad at this point. John Osburn, the owner of the land, executed a deed to the Mobile & Ohio Railroad Company, conveying certain land lying in the four angles contiguous to the crossing. It appears that this deed was lost and never recorded. However, both railroads and the hotel building were all completed prior to the civil war. In 1859 Osburn executed a deed of trust on the hotel property to one Taliaferro, and in 1860 he made a second deed of trust on this property to one Black. These deeds of trust were foreclosed shortly after the war, and at the chancery sale the hotel property was purchased by Roe & Barnes, at the price of $24,100. In 1870 Roe & Barnes sold the hotel property to R. E. Dunlap, who

assumed the payment of balance of purchase money. Dunlap failed to pay debt due by Roe & Barnes, and the property was again exposed to public sale, when it was purchased by Sparrel Hill. In 1885 Hill sold the property to Peebles, and in April, 1887, Peeples sold to the present defendant, Dan Donovan.

Turning back to 1870, we find that the Memphis & Ohio Railroad Company filed a bill against Roe & Barnes and the heirs of John Osburn, deceased, for the purpose of establishing the lost deed executed by John Osburn in his lifetime, and charging that the deed conveyed to the railroad all the land embraced in the four angles made by the intersection of the two roads and comprising about thirteen acres, reserving, however, sufficient ground for a hotel. Roe & Barnes answered the bill, denying that the deed conveyed all the angles, alleging that the whole northwest angle was expressly reserved. The Mobile & Ohio Railroad Company filed a petition in that case, asking to be made a party, and that its rights be adjudged. It alleged that under its charter it had a right of way one hundred feet wide on each side of its road; that the hotel, then constructed, was only forty feet from its center line and was infringing on its property. It also claimed that Osburn deeded all four of the angles to the two railroads. In 1871 Dunlap, who then owned

the hotel property, filed a cross bill in said cause against the Mobile & Ohio Railroad Company and others, alleging that Osburn only conveyed three angles to the railroad, reserving the northwest angle. The Mobile & Ohio Railroad Company failed to answer this cross bill, and a *pro confesso* was taken against it. No appeal was ever perfected from said decree.

It appears at the time that bill was filed the two railroad companies were in possession of the three angles, and have been in possession ever since, occupying them for various railroad purposes.

The Court held in that proceeding that John Osburn did execute a deed to the two railroad companies embracing the three angles contiguous to the crossing, but that the northwest angle was reserved, excepting a strip fifty feet wide from the center of the track on the west side. The boundaries of the last deed, which was set up and established by the decree of 1874 in the Lannon case, are, viz.:

"A lot or parcel of land situated in the Third Civil District of Gibson County, Tennessee, beginning at a point on the center line of the Memphis & Ohio Railroad 650 feet in a southerly direction from its intersection with the Mobile & Ohio Railroad, running fifty feet in a southerly direction at right angles with said Memphis &

Ohio Railroad; thence running by a regular curve of 476 feet radius to a stake near the center line of the Mobile & Ohio Railroad, 650 feet southerly from its intersection with the Mobile & Ohio Railroad; thence in a direction at right angles in an easterly direction to the Mobile & Ohio Railroad, 100 feet to a stake, crossing the center line of the Mobile & Ohio Railroad at 50 feet; thence by a regular curve of 716 feet radius to a stake near the Memphis & Ohio Railroad, 650 feet northerly from its intersection with the Mobile & Ohio railroad; thence in a direction at right angles to said Memphis & Ohio Railroad 100 feet to a stake, crossing the center line of said road at 50 feet; thence by a regular curve of 476 feet radius to a stake near the Mobile & Ohio Railroad 650 feet northerly from its intersection with the Mobile & Ohio Railroad; thence in a direction at right angles to said Mobile & Ohio Railroad 100 feet to a stake, crossing the center line of said road at 50 feet, then southerly to the Memphis & Ohio Railroad; thence west down said Memphis & Ohio Railroad, so as not to interfere with said hotel building and other buildings along the line of said road, to the beginning, containing about —— acres.

"And it appears to the Court from the testimony in this cause that said lot of three angles of land was . . . conveyed to said Mobile &

Ohio Railroad and Memphis & Ohio Railroad jointly, by them to be had and held for any and all railroad purposes, such as roadbeds, switches, 'Y' tracks, depot grounds, without let or hindrance or molestation by, and to be freely and fully used by said

railroad company. The Court then adjudged and decreed that said railroad companies are hereby invested with the title to said three angles of land above described by them, fully, to be used and employed for all railroad purposes and no other, such as roadbeds, switches, 'Y' tracks, and

depot buildings, without let or hindrance on the part of any one: but neither of said railroads shall erect a hotel, eating house, or saloon on said angles. It was further decreed that said railroad companies are to have the privilege of constructing and using suitable platforms around said angle connecting with said hotel," etc.

Now, it will be perceived the complainant company is seeking to make the same question in this case which it made in 1874 in the Lannon case, and which was adjudicated against it— namely, that under its charter it was entitled to one hundred feet on each side of its road. But it was determined in that case that the company was only entitled to fifty feet on the west side of the center of its track. This decree is of course conclusive of the question now sought to be made, no appeal having been prosecuted and the same standing unreversed.

We agree with the Chancellor in his holding that the rights of the Mobile & Ohio Railroad Company in said strip of land are acquired and held under and by virtue of the Osburn deed and the decree of 1874 setting up that deed; that whatever its charter rights and its right of way under its charter may have been in and to the same prior to its acceptance of the benefits under the Osburn deed, that by its acceptance of the benefits of said deed and going into

the possession of the lands conveyed in the other three angles, and using, occupying, enjoying and claiming the same, that it thereby intended to give up and abandon any and all rights and claims that it had in said strip of land in the northwest angle, under and by virtue of its charter and right of way, of any width whatever, in the same; that said Mobile & Ohio Railroad, by the acceptance of the benefits of said deed and decree, and by its acts and doings in the premises, is estopped from setting up any claim or title to said strip of land under and by virtue of any right of way or possession under its charter. We also agree with the Chancellor that under said deed and the decree of 1874 establishing it, the Mobile & Ohio Railroad Company is given an easement in said strip of land the full width of fifty feet, for railroad uses, and no other purposes.

The Chancellor, in deciding the present case, held that the west boundary line in the deed and decree of 1874 ran parallel with the Mobile & Ohio Railroad track and fifty feet from the center line of said track, but so as not to interfere with the hotel building along the side of the Mobile & Ohio Railroad, or on the side of the Memphis & Ohio (L. & N.) Railroad.

This last clause raises the principal controversy in the present case—namely, What are the rights

of the respective parties in this fifty-foot strip? The general rule is "that an easement gives to a railroad company a right of way in the land—that is, the right to use the land for its purposes. This includes the right to employ the land taken for the purposes of constructing, maintaining, and operating a railroad thereon. Under this right the company has the free and perfect use of the surface of the land so far as is necessary for all its purposes, and the right to use as much above and below the surface as may be needed. This would include the right to tunnel the land, to cut embankments, to grade and make roadbeds, to operate and maintain a railroad with one or more lines of track, with proper stations, depots, turnouts, and all other appurtenances of a railroad."

The former proprietor of the soil still retains the fee of the land for any purpose not incompatible with the purposes of the railroad company.

"The paramount right is with the railroad company, and the landowner can do nothing which will interfere with the safety of its road, appurtenances, trains, passengers, or workmen." *Railroad Company* v. *Telford,* 5 Pickle, 293, 298, 299; *Railroad* v. *French,* 16 Pickle, 209, 212; *Railroad* v. *McReynolds,* 48 Southwestern Reporter, 258, Ch. App.

The question then remains whether the defend-

ant, Donovan, and his predecessors in title, by adverse holding have acquired title or an easement in said land. Complainant, in its bill, alleges title by peaceable possession for more than twenty-five years. The defendant also claims an adverse holding of said land for twenty-five years. It is conceded by learned counsel for the defendant that the statute of limitations does not begin to run against a railroad company until the land is needed for railroad purposes; that the occupation of the land by the owner of the fee is not inconsistent with the title of the railroad which has an easement in the same so long as it is not required for railroad purposes. But the insistence of defendant is that the evidence of complainant shows that the company needed this strip of land for railroad purposes, and had needed it for many years, and that the holding of same by defendant had been of such a character as to make the holding adverse. The evidence on this point is that the old hotel, erected by Osburn, stood until 1872, when it was burned down and the present brick hotel building constructed. It appears that the old hotel was built with an eight-foot veranda along its east side, forming a part of the hotel, and the old hotel stood about forty feet from the center line of the right of way of the Mobile & Ohio Railroad Company. It further appears that a platform extending from the east edge of the hotel veranda to within

eighteen feet of the railroad track was originally built for the convenience of the hotel, and that this platform was repaired and kept up by the successive owners of the property. It also appears that the railroad built and maintained a platform along the west side of the track about sixteen or eighteen feet in width, and adjoining the platform erected by the hotel owners. This was about the situation of the property until 1893, when the defendant, Donovan, erected the present brick hotel on the site of the old hotel.

When this bill was filed, in July, 1893, Donovan was proceeding to build a fence and was digging holes along the line of the east edge of his hotel platform, which, he claimed, was the line of the original fence. Donovan claims all of this strip, excepting about eighteen feet from the railroad track. In constructing the new hotel it was claimed by the roadmaster of the complainant company that the southeast corner would encroach upon the fifty-foot strip about two feet. Donovan was notified of this fact, and, after making measurements, moved back his foundation from this strip. Said hotel building, at all points, was built more than fifty feet from the center line of the Mobile & Ohio Railroad Company, its southeast corner being about fifty-one feet from said center line and its northeast corner being about fifty-five feet from the same.

It appears from the proof that the several

owners of the hotel planted shade trees on this strip of land; they set out flowers and shrubbery on it; they opened an artificial lake on it; they laid it off in grass plots, and such portion of it as was not needed for ingress, egress, and regress was inclosed by a fence. As already stated, the part of this strip in front of the hotel was covered with a platform, which was built and maintained by the proprietors of the hotel for the use and convenience of the guests. But we are unable to concur with counsel that these acts on the part of the several proprietors of the hotel constituted an adverse holding or was inconsistent with the easement to which the company was entitled in this strip of land whenever it might become necessary for railroad purposes. We agree with the Chancellor that the holding of the Mobile & Ohio Railroad Company and the holding of the defendant, Dan Donovan, of said strip of land, or any part thereof, have not been adverse, and that it has not been of such a character as to give either of them a dominant title, excepting so much as is covered and occupied by the roadbed of the Mobile & Ohio Railroad Company. As was said by this Court in *Railway* v. *Telford's Executors,* 5 Pickle, 293, subject to the easement of the railway company in the lands taken, the fee and right of possession remain with the vendor, and therefore his possession of the land for agricultural purposes is not adverse to

the company's right, so long as the land is not required for railroad purposes, and there is no open assertion of any hostile right to or incompatible with the company's easement therein. So in *French* v. *Railroad*, 16 Pickle, 209, it was held, viz.: "Possession of lands within the right of way of a railroad company, maintained by the owner of the fee by the erection of buildings thereon and inclosure and cultivation, is not adverse to the company, and will not, though continued for more than seven years, defeat or affect its easement therein, or its right to occupy and use the premises for any legitimate and necessary railroad purpose."

It is next assigned as error by both complainant and defendant that the Chancellor held that the west boundary line, as established in the decree of January, 1874, ran parallel with the Mobile & Ohio Railroad track and fifty feet west from the center of said line of said road, but so as not to interfere with the hotel building fronting on the Mobile & Ohio side, as well as on the Memphis & Ohio side. The complainant insists that the Chancellor was correct in holding that the line ran parallel with the Mobile & Ohio Railroad, but he was in error in holding that it must be run so as not to interfere with the hotel and other buildings. The defendant insists that this line was an error in the decree of

20 p—31

1874; that it should have stopped in the center of the Mobile & Ohio track and run down it.

It is a sufficient answer to the contentions of both parties that this line was established by the decree of 1874, in which cause they were both parties, and they are of course bound by it. It was the manifest purpose and intention of the grantors in said deed, as declared by the decree of 1874, that the line should be run so as not to interfere with said hotel and other buildings, the object of the grantor being to render this northwest angle valuable for hotel purposes. It would wholly defeat the expressed intention of the grantors if the west boundary line should be run so as to destroy or impair the value of the hotel property.

But it is said on behalf of complainant that the decree of the Chancellor leaves the parties in the dark as to their respective rights in this fifty-foot strip; that it declares the Mobile & Ohio Railroad Company has an easement in this strip, but it is not to be used so as to interfere with the rights of the hotel company; and, on the other hand, that the defendant, Donovan, also has a right to this strip, but it shall not be used so as to endanger the running of trains. We think the decree of the Chancellor is perfectly clear, and its own language furnishes a complete answer to the assignment of error. It is as follows:

"The Mobile & Ohio Railroad Company is given and has an easement in said strip of land for the full width of fifty feet, for railroad purposes, and freely and fully to use the same for all reasonable railroad purposes, but that said easement and said use is subservient to the like right of the owners of the said hotel property, to the full, free, and unimpeded use of the same for free and uninterrupted egress, ingress, and regress to and from the said hotel, and not to be interrupted in the same by the Mobile & Ohio Railroad Company, and the same is so adjudged and decreed.

"The Court is further of the opinion that the Mobile & Ohio Railroad Company has no right to use said strip or parcel of land in any manner that will materially lessen or injure the value of said hotel property, it being the evident intention and purpose of said deed, as set up in said decree, to render the northwest angle, in which said hotel is and was located, valuable for hotel purposes, and the same is so adjudged and decreed.

"The Court is further of the opinion that the owners of said hotel property, in the use of said strip of land, as hereinbefore decreed, have the right to erect proper fences in said plot of ground and to inclose grass plots and flower plots and beautify the same, provided such fences are not of such a character and so located as to inter-

Railroad *v.* Donovan.

fere with the railroad company in the use of the same for proper railroad purposes, and do not approach so near to the railroad as to endanger the running of trains or interfere with the running of the same, and the Court is of further opinion that the owners of the hotel property have the right to plant out and grow proper shade trees on said · strip of land, but not to endanger the running of trains, and that such use would be a proper use for hotel purposes, and the same is so adjudged and decreed."

We think the difficulties suggested by counsel in the interpretation of this decree are unsubstantial. It is not shown that the railroad company is demanding this right of way for any reasonable railroad purpose or that it is· needed at this time. It is not shown that the shade trees planted out by the owners of the hotel or the fence inclosing the grass plot are at all harmful to the railroad or dangerous in its operation. When such an emergency arises, the company will have its remedy. We cannot anticipate such trouble or determine in advance what particular use may be made by the railroad of this strip of land further than is defined by the deed and the decree of 1874.

The decree of the Chancellor is affirmed.