LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* W. S. MAXWELL.

## (*Jackson.*   April Term, 1912.)

1. **RAILROADS.   Prescriptive right to maintain embankment over servient land does not warrant the raising of the embankment.**

Where a railroad company has acquired a prescriptive right to maintain its embankment over servient land, that right will not warrant it in raising the embankment, so as to impose a greater burden on the servient land.   (*Post, pp.* 327, 328.)

Case cited and approved:   Railroad v. Mossman, 90 Tenn., 157.

2. **WATERS AND WATERCOURSES.   Surface waters are a burden on the lowest land.**

The lowest land is required to bear the burden of surface waters. (*Post, p.* 328.)

Case cited and approved:   Garland v. Austin, 103 Tenn., 555.

3. **SAME.   Same.   Lower land raised, by deposits, to level of the once higher land, is no longer required to bear burden of surface waters.**

Where a railroad company, with a prescriptive right to maintain its embankment, made a ditch, whereby surface waters were permitted to run through a culvert upon the lower land of another, until the deposits and accumulations of soil and sand thereon raised it to the level of the land on the other side of the embankment, it was *held* that by so raising the level of the lower land, the rule that the lower land is required to bear the burden of surface waters was put in abeyance, or made inapplicable, and that the railroad company was not bound to provide a means to carry off such surface waters, for the reason that it no longer had the right to drain over what was formerly the lower land.   (*Post, pp.* 328-330.)

FROM HENRY.

Appeal from the Circuit Court of Henry County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—THOS. E. HARWOOD, Circuit Judge.

W. W. FARABOUGH and J. W. LEWIS, for Railroad.

SWEENEY & SWEENEY, for Maxwell.

MR. JUSTICE NEIL delivered the opinion of the Court.

This suit was brought in the circuit court of Henry county by the defendant in error to hold the plaintiff in error liable in damages for overflowing his lands by backing up water thereon, by means of the embankment on which the track is laid, and by the stoppage of the drains and culverts running under the embankment. It is alleged that damage was done to several acres of defendant in error's land lying north of the track, to several other acres lying south of the track and west of the public road by the means referred to, and also to certain other acres on the south of the track and east of the public road, by means of a drain cut by the railway company from a ditch running along the south side of its track, so as to lead the water down into the defendant in error's land. The plaintiff in error pleaded not guilty. A jury was impaneled, and the case was tried, with the result that a verdict was rendered in favor

of defendant in error for $120. The plaintiff in error, before the case was given to the jury, moved for a peremptory instruction in its favor, but this was overruled. After the motion for a new trial had been made and overruled, the case was appealed to the court of civil appeals, and the judgment of the trial court was affirmed. A petition was then filed in this court for the writ of *certiorari* to move the cause here for trial. The petition was granted, and the cause was placed upon the docket for oral argument at the bar, and it has been so argued.

We are of the opinion that both the trial judge and the court of civil appeals erred in overruling the motion for a peremptory instruction.

The undisputed facts are as follows:

In the year 1857 or 1858 the railway track was constructed across the land now owned by defendant in error on an embankment ranging from two feet, or two and one-half feet, at its crossing with the public road, to five feet, at the west or lower end. This track has been maintained since that time, but during the last nine or ten years it has been raised two or two and one-half feet. Prior to 1900 the land was owned and occupied by one Mossman. At that time there was a drain that seems to have been the natural bed of a small stream, that ran from near what is now defendant in error's house south to the railroad, through a culvert under the railroad into a ditch due south, which was dug by Mossman to lead the water into the lower lands still further south. As long as this ditch was kept open

there was no trouble about the overflow of the land. Defendant in error went upon the land about the year 1900. By 1902 the ditch south of the railroad had been allowed to fill up, and the land there also had been raised to some extent by the deposits of sand brought down by the water, with the result that the culvert was choked and the water was backed up on defendant in error's land. Prior to this time defendant in error had checked the flow of water on the north side from going down through the culvert by digging a lateral ditch and throwing it on some swamp land he had, for the purpose of filling and raising that land, and this he accomplished to a considerable extent. The situation, as it stood in 1902 above indicated, became a subject of anxious consideration between defendant in error and the section foreman who was then in charge of that part of the railroad. Between these two it was agreed that the railway company should dig a ditch on each side of its track, so as to lead the water westward, and enable it in that manner to reach a creek several hundred feet distant. The culverts were cleaned out and this experiment was tried. In order to use this plan it was necessary to turn the water at right angles after it had passed through the culvert. The plan was tried for about two years. The fall was so slight that it was necessary to clean out the ditches every sixty days. When this was done the water was sufficiently taken care of, except in cases of extraordinary floods. This plan was, after being tried as stated, abandoned by the railroad, and the culverts again allowed to clog, and the defendant

in error's land was overflowed. There is no doubt that if the ditch were open to the south of the track, as it· was in 1900 and prior to that time, the water would be properly taken care of. The evidence is that the natural flow of water is southward, not along the line of the old ditch, but southeast across defendant in error's land, but in any event southward and away from the track of the railway company.

The position insisted on by the defendant in error is that the railway company should open and keep open the ditches alongside of its track, and dispose of the water in that way. The contention of the railway company is that the water should be allowed to follow its natural course southward and away from the railway line. As we have already said, a ditch maintained either alongside of the track, or one southward, would thoroughly take care of the water. The question is whether it is the duty of the railway company to provide a means of removing the water from defendant in error's land, or whether it is the duty of the defendant in error to permit the water to take its natural course southward.

Before considering this question, it is proper to state that, in the case of *Railway Co.* v. *Mossman,* 90 Tenn., 157, 16 S. W., 64, 25 Am. St. Rep., 670, it was held the railway company had acquired by prescription the right to maintain its embankment over this land. The defendant in error, however, rightly insists that this prescription would not protect the railway company, in

so far as the track has been raised within the last nine or ten years, as previously mentioned. Still it does not appear that the raising of the track has had anything to do with the backing up of the water, but, on the contrary, that the sole cause has been the stopping up of the culverts by sand and debris, and that this in turn was caused in the outset by the filling up of defendant in error's land south of the railway line, through the filling of the ditch that formerly ran over that part of the land, and afterwards by the filling up of the experimental ditches which the railway company constructed on each side of its track.

So the rights of the parties stood. The railway company had rightly constructed its embankment across the land, had constructed culverts to let the water through from the higher land on the north, and that water flowed away without danger to any one through the ditch on the south; the land on the south being lower than that on the north, and, under a rule established in this State, being required to bear the burden of the water. *Garland* v. *Aurin*, 103 Tenn., 555, 53 S. W., 940, 48 L. R. A., 862, 76 Am. St. Rep., 699. Now, did defendant in error, by permitting his ditch to fill up on the south of the track, have the right to impose upon the railway company the duty of caring for the water which came down upon his lands on the north from other higher lands, and which was deposited there by rainfalls? We think not.

At this point another inquiry arises: Was it the duty of the defendant in error to maintain a ditch at all on

Railroad v. Maxwell.

his land south of the railroad, or did he satisfy the law by merely permitting the water to flow from the higher level to the lower level? We are inclined to the view that the latter course would meet the requirements of the legal duty imposed on him. But suppose that, in course of time, by natural deposits, as actually happened, the lower land became so filled up that the water would not flow away, and as a result of this defendant in error's land was flooded. Could the railway company be held responsible? We think not, except to the extent that the higher embankment, raised within the last nine or ten years, caused such backing up. We do not find any evidence in the record that meets this phase of the case. A new situation developing by the filling up of the lower land, the duty was devolved upon the defendant in error either to allow his land to retain the water on the north, or to let it away on the south, by digging a ditch. If the water incommoded the railway company, the duty would be devolved on it to dispose of it by ditches drawing it away. In other words, under the new status caused by the filling up of the land on the south side of the track, the law as to the lower land being subservient to the higher land would be held in abeyance, or would not apply, because, under the case stated, there would be no lower land. The situation then would be the same as if the railway line had been built through a swamp. If the railway company desired to drain the water away for its own protection, it could do so; but, having acquired the right by prescription to maintain its embankment, it would

Railroad v. Maxwell.

not be liable to the owner therefor, except to such extent as it might be shown that injury had been effected by the subsequent raising of the embankment.

In neither view of the case is there any right of action shown in behalf of the defendant in error.

As to the drain complained of on the south side of the track, and east of the public road, the evidence is that that drain was cut at the special request of defendant in error in order that the water might flow down upon a low place and fill it up with sand.

It results that, inasmuch as defendant in error has not maintained his right of action claimed, the suit must be dissmissed.