## C. N. O. & T. P. RY. CO. v. J. T. MOON.

Eastern Section.    April 17, 1926.

No petition for Certiorari was filed.

1. **Water and water courses. Railroad is liable for overflow caused by allowing ditch along its right-of-way to become filled up.**
    A railroad which for years maintained a ditch along its right-of-way to carry off the surface water, held liable for the damage caused by overflow caused by allowing the ditch to become filled up.

2. **Water and water courses. Easement for drainage by prescription.**
    In an action to recover for damages caused by an overflow where the railroad had maintained its right-of-way for a great many years and during all that time had kept an open ditch for drainage of plaintiff's land, held that plaintiff had a right to have the ditch kept open by the railroad.

3. Water and water courses. Duty is on the railroad to provide ditches to take care of the natural drainage along its right-of-way although it does not own the fee.

Although the plaintiff may own the ultimate fee the railroad has a duty to keep the ditches open to take care of natural drainage and the fact that plaintiff himself did not go on the right-of-way and himself open the ditch or did not dig a ditch on his own land in lieu of the one on the right-of-way, is not a bar to his right to recovery for damages from overflow sustained by him because of the railroads failure to keep the drainage ditch open.

Appeal in Error from Circuit Court, Rhea County; Hon. J. T. Raulston, Judge.

Horace M. Carr, of Harriman, for plaintiff in error.

W. L. Givens, of Dayton, and W. E. Snodgrass, of Spring City, for defendant in error.

THOMPSON, J. J. T. Moon instituted this suit against the C. N. O. & T. P. Ry. Co., before a Justice of the Peace of Rhea county, seeking to recover the sum of $500, damages, for: "wilfully, negligently and unlawfully turning surface water off of its right-of-way onto the lands of plaintiff, overflowing and flooding his spring and spring house and also for wilful and negligent failure to, keep open its ditches and drainways on its said right-of-way, thereby causing the water to back up and overflow plaintiff's said spring damaging and contaminating and polluting its water and rendering it wholly unfit for use and dangerous to the health of himself and family and damaging plaintiff's land, spring and spring house and destroying its free use and benefit."

When the case reached the circuit court an order was entered, upon plaintiff's motion, amending the warrant "by adding as a second count, after the first paragraph the words: And damaging and totally destroying much butter, milk and other things of value and rendering said spring house totally unfit for the use and purpose for which it was built and maintained. And for work and labor in clearing away the dirt, sand, gravel, cinders and other debris washed into said spring and ground by said backwater."

At the trial in the circuit court the defendant relied upon the general issue and a special plea of the statute of limitations of three years.

At the conclusion of the plaintiff's evidence, the defendant moved for a directed verdict, which was overruled. The defendant introduced no evidence, and the case was submitted to the jury, who rendered a verdict in favor of the plaintiff for $350. Its motion for a new trial having been overruled, the defendant has appealed to this court and assigned error.

Owing to the fact that the witnesses testified mostly from a map drawn on the floor of the court room, and pointed by hand to

directions, locations, etc., instead of describing them, it has been difficult for us to get at the facts. But the evidence, as near as we can make it out, shows the following:

The plaintiff's land originally belonged to one John Robinson, who conveyed a right-of-way across or through it to the defendant railway in the year 1874. The defendant completed the building of its railroad and began operating it in the year 1878 or 1879. Plaintiff bought the land (on both sides of the railroad) from Robinson about the year 1910, and brought this suit on December 23, 1922. The plaintiff's title papers were not introduced in evidence, and the record does not show whether his deed calls for the land up to the railroad right-of-way on each side of it, or whether it describes the entire boundry, with the right-of-way traversing it. It is urged for the defendant that the presumption, therefore, is that the plaintiff owns the ultimate fee in the land upon which the right-of-way is located. However, in the view we take of the case the question is unimportant.

The railroad, as it crosses or traverses plaintiff's land, runs north and south. The natural flow of the surface water is from the northeast to the southwest, and the railroad is on a fill or embankment which (without culverts or ditches) would obstruct this natural drainage. The condition complained of is on the east side of the railroad. When plaintiff bought the land there was a ditch on the right-of-way on the east side of the fill or embankment. This ditch, of course, extends north and south and is parallel to the railroad track or fill. Its fall was to the south, and the water from the land of plaintiff and others east and northeast of the track or fill ran into this ditch and along it southwardly to a culvert under the fill on the land of one Paul, south of plaintiff's land. It went through this culvert to the west side of the fill or embankment, and from there drained away to the west or south-west. The right-of-way is fenced and this ditch is on the inside of the fence, i. e., on the right-of-way.

Plaintiff had a spring (surrounded by a "spring lot") on his land east of the railroad or right-of-way. The water from this spring ran southwestwardly along a ditch or drainway into the ditch on the right-of-way, and then down this ditch to the culvert.

At the time plaintiff bought the land, and for several years thereafter, the defendant kept this ditch on its right-of-way open, and it took care of the water except in extreme rains when there would be slight overflows. But for more than three years prior to the institution of this suit it neglected to keep open the ditch along its right-of-way on the east side of the fill, except the northern part of it. That part of it west and southwest of the spring was allowed to fill up and become clogged, but from a point slightly northwest

of the spring and extending from there northwardly it was kept cleared and open, or at any rate it remained cleared and open. The result was that the water on the land of plaintiff and others north of the spring ran into the northern and cleared part of this ditch on the right-of-way. It then ran along this ditch southwardly to the point slightly northwest of the spring where the ditch had been permitted to fill up and become clogged. There it spread out over plaintiff's "spring lot," and submerged his spring whenever it rained. Indeed, some of the evidence would indicate that the defendant, at this point where the filling up or clogging of the ditch began, dug a short ditch turning the water onto plaintiff's spring lot.

This ditch on the right-of-way was also permitted to fill up and become clogged at the point where the ditch or drain from the spring emptied into it and this added to the overflow.

There is no direct evidence or proof that the defendant originally dug this ditch on its right-of-way on the east side of the fill and which it permitted to become filled up and clogged, but the proof shows that at the time plaintiff bought his land and for several years thereafter, the ditch was there and the defendant cleaned it out regularly and thus prevented overflows, and we think that the jury having found in favor of the plaintiff, it is entirely proper for us to infer that defendant did originally dig and construct this ditch. We think it clear from the record that had the defendant continued to keep it open and cleared there would have been no overflows, except during extreme rains.

As to how long it would take to clear out this ditch, one witness testified: "A. The foreman might take his crew there and fix it in a couple of days. "Q. How long would it take a crew to go there and fix that all up? It might take a week."

The defendant, among other things, insists that the original conveyance by Robinson (plaintiff's predecessor in title) of the right-of-way to the defendant contemplated and covered all such damages as those involved in this case, and defendant cites Hord v. R. R., 122 Tenn., 400, and Knott v. L. & N. R. R., 144 Tenn., 676. But the gravamen of this case is negligence and wrongfulness, i. e. the negligent and wrongful failure of the defendant to keep and maintain its road in such condition as not to unlawfully and illegally obstruct the natural drainage or flow of the water, and not to wrongfully and illegally collect the surface and rain water from the land of plaintiff and others and pour it onto plaintiff's spring lot in a concentrated form and in unnatural quantities. The decisions are therefore authorities for plaintiff and are contrary to defendant's insistence.

Defendant next insists, under the authority of Railroad v. Moss-man, 6 Pickle, 159, that the road and embankment having been constructed and maintained for more than twenty years, the defendant has acquired rights by prescription which prevent any recovery by plaintiff. But the defendant up to a few years prior to the institution of this suit kept the ditch open and did not cause plaintiff's land to overflow. It thereby recognized plaintiff's rights, and this decision, and that of Railroad v. Hays, 11 Lea, 382, and Davis v. Railroad, 147 Tenn., 1, are authority for plaintiff and are contrary to defendant's insistence.

The defendant next insists that the ultimate fee in the land on which the right-of-way is located is in the plaintiff; that neither the defendant nor the plaintiff controls the land covered by the right-of-way to the exclusion of the other; that the defendant has possession of it for all lawful and necessary purposes; that the plaintiff has the right to possess and use in a lawful manner any part of it not occupied or in actual use by the defendant; and that possession and use of it by neither plaintiff or defendant is adverse to the other—Citing Railroad v. Donovan, 104 Tenn., 465, and Railroad v. Vann, 142 Tenn., 76. To this we agree, provided the ultimate fee is in plaintiff as defendant insists; and we will assume that it is.

But defendant further insists that it was the duty of plaintiff to go onto its right-of-way and clean out the ditch, and that this duty of keeping the ditch open was on plaintiff rather than on defendant; and defendant cites Railroad v. Maxwell, 126 Tenn., 323, as supporting its insistence.

We do not think the Maxwell case supports defendant's insistence. There the land on what had been the lower side of the embankment had filled in and risen (from natural causes) until it was higher than the land on what had been the upper side, and it was held that it was not the duty of the railroad to provide drainage for the land on what had been the upper side but was then the lower side. The conditions had changed so that what had been the "dominant" land had become the "servient" land, and it was held that the railroad was not obligated in any way to provide drainage for this "servient" land.

We think it a fair inference of fact from the evidence introduced in the instant case that the ditch along the right-of-way on the east side of the fill or embankment was dug by the defendant for the purpose of taking care of surface water on the lands of plaintiff and others, and in order not to obstruct the natural flow or drainage thereof by its embankment. Had this ditch not been dug it is evident and manifest from the record that the natural drainage would have been obstructed unless other culverts had been put in

north of the one into which the ditch when kept open turns the water; and in our opinion the duty was on the defendant and not on the plaintiff to keep this ditch open, or to provide other means of taking care of the natural drainage. We think this is the natural conclusion to be drawn from the cases above cited, as well as from C. N. O. & T. P. Ry. v. Roddy, 132 Tenn., 568; L. & N. Ry. v. Hays, 11 Lea, 382; Carriger v. Ry., 7 Lea, 378; Railroad v. Higdon, 111 Tenn., 121 and Harmon v. Railway Co., 87 Tenn., 614.

In our opinion although the plaintiff may own the ultimate fee, the failure of the defendant to keep the ditch open was an actionable wrong, and entitled the plaintiff to a recovery, and the fact that plaintiff himself did not go on the right-of-way and himself open the ditch, and did not dig a ditch on his own land in lieu of the one on the right-of-way, is not a bar to his right to a recovery for the damages from the overflows sustained by him within three years next preceding the bringing of this suit.

It results that in our opinion there was no prejudicial error committed in the trial of the case, and the judgment of the court below will be affirmed with costs.

Portrum and Snodgrass, JJ., concur.