Carriger *v.* Railroad Company.

C. E. CARRIGER *v.* EAST TENN., VA. & GA. R. R. CO.

1. RAILROADS. *Culverts. Overflow.* It is the duty of the railroad compa-
nies to provide by culverts or other means for the safe passage of ac-
cumulated surface water, and they are liable in damages for injuries
to adjacent lands by overflow or back-water, caused by their failure
or neglect to perform this duty.

2. SAME. *Same. Same.* They must provide against the recurrence of un-
usual and extraordinary accumulations which have once happened,
and are conclusively presumed to know the habits of streams adja-
cent to the track.

3. SAME. *Same. Right of way.* The right of way to the land upon which
the road is constructed, together with a hundred feet on each side of
the centre of said road, endows it with no rights beyond those ex-
pressed. All lands are of necessity burthened with the servitude of
receiving and discharging all water which flows down to them from
lands on a higher level.

4. SAME. *Same. Compensation.* Possible future injuries from accumu-
lated surface water, caused by the erection of the road-bed and track,
was not a part of the incidental loss and damage estimated in fixing
compensation for granting the right of way. The statutory compen-
sation does not extend to damage or injury not authorized by the
charter, such as injuries resulting from carelessness, negligence or
willful trespass.

5. SAME. *Same. Time.* That the plaintiff was not owner of land injured
when road was built, is not material. Each overflow caused by the
negligence, carelessness or want of skill of the defendant or its agents
is an independent wrong, and a cause of action for the damage re-
sulting to the crops or other property of the rightful possessor of land
overflowed.

---

FROM HAMBLEN.

---

Appeal in error from the Circuit Court of Ham-
blen county.   J. G. ROSE, J.

J. C. HODGES and J. T. & J. K. SHIELDS for Carriger.

GEO. BROWN for Railroad Company.

Carriger *v.* Railroad Company.

TURNEY, J., delivered the opinion of the court.

The plaintiff is, and has been for about twenty years, the owner of a tract of land in Hamblen county, through which the defendant's road was erected before his purchase.    There is a valley running north and south in which the land is situated.    About one and a half miles south of the farm is a spring, from which Riggs' branch runs about one-fourth of a mile northward into a sink, and disappears in ordinary time of water.    West of this is another, known as the Morris branch, rising about one mile from the railroad and runs to within about half a mile of the road into a sink.    When the water is high the places into which these branches sink become choked and do not afford vents for the water.    The basins become filled and the waters overflow in a northward direction toward plaintiff's farm, filling a number of other sinks and running on to plaintiff's farm and down to an embankment on the railroad crossing the valley mentioned.    There is no culvert or other escape in the embankment.    Beginning with the spring of 1867, there have been several very unusual rainfalls, by means of which plaintiff's lands have been overflowed and his crops destroyed or injured.    In February, 1875, there was an overflow, forming a lake above the fill or embankment.    Upon this the March rains fell, so as to fill the valley to the top of the embankment and run over it in a large stream, and continued to run over it for about ten days.    The water ran into the lake from the streams above for

about the same time.   The lake covered about twelve and a half acres, that would not have been covered had there been a culvert or other outlet, injuring plaintiff's crop to the amount of $170.

Where the water runs to the railroad there is in the valley no branch or bed or banks to show that a stream ever ran there; but, for many years before the railroad was built, when there was a heavy fall of rain a large creek would run down the valley, across where the fill now is, towards Holston river. Several years usually intervene between the overflows, though they sometimes occur in consecutive years. When overflows occur, the water must fill up the sink-hole where the branch sinks, and the depression around it to the depth of about eight feet.   It then overflows into a second sink or hollow, and must fill it to the depth of ten or twelve feet before finding an outlet.   From the second sink-hole the water will have to overflow a number of other sinks before it can reach plaintiff's land.   When the overflows occur there is no other outlet than the plaintiff's land from either the Morris or Riggs branches.   When there is a high tide in the river these branches overflow to a greater or less extent.   As the country grows older and is cleared up, the same amount of rain will cause a greater overflow than in former years.

To recover for damages done to plaintiff's land and crops by the overflow of 1875, this action is brought.   The cause was tried by the circuit judge without a jury.   Judgment was entered for defendant and plaintiff appealed.

His Honor the circuit judge, in his opinion, says: "The court is of the opinion that the overflow in question resulted from accumulations of surface water caused by extraordinary rains, and that the law relating to surface water, and not that of running streams, governs the case. The court is further of opinion that defendant, in the exercise of its corporate rights and franchises, constructed the road at the point in question in a proper manner, the said embankment being necessary to cross said valley and to make the ascending grade east from said point. The court is further of opinion, that, under the facts of this case, the defendant was not bound to construct culverts under said embankment for the discharge of said surface water and the drainage of plaintiff's land."

The question to be determined is, is this such surface water as to relieve the defendant?

It is apparent from the proof that the water invariably and of necessity flows down the valley in the one channel when the heavy rains prevail, and has done so from time beyond the memory of man; the passage over which it runs is its only possible way of escape. It concentrates in and from the two springs, and uniting forms a creek. The springs and their branches are never-failing, and flow off in a northward direction toward the farm of plaintiff. In ordinary times they find outlets through the caverns or sinks in the earth; in extraordinary times their volumes are too great for the usual place of discharge. These springs and branches are sometimes large and sometimes small, still they are the same springs and

branches, requiring, as all running streams do, sometimes less and at other times more surface for their escape. If the sinks through which they commonly empty themselves were filled (as it seems they are in process of doing) the natural and unavoidable channel would be over the ground now occupied as a bed in times of overflow. If the cavern outlets were filled and the embankment away, there would be no overflow of the twelve and a half acres; but if the embankment remains, without culvert, the overflow will be continuous and permanent.

The overflows come as well when there are rises in the river as when there are heavy rainfalls. This fact, unexplained, tends to prove that the springs and branches are fed in some way, notwithstanding their relative surface locations, from the river, and are as much running streams as the river. They rise and fall with the river. The channel and mouths of the branches are fixed by the less or more water of the river.

If the embankment had been erected in a valley near a low bank of the river, which overflowed at high tide but escaped in one passage so as not to materially injure adjoining lands, but if obstructed by the embankment would overflow and damage, as in this case, we think it would not be insisted that it was not obligatory on the defendant to build a culvert to prevent damage that must certainly come with the high tide.

Is there a difference in reason as to the case put and the one at bar? We think not. While they

Carriger *v.* Railroad Company.

may not be so frequent, the overflows from the branches are as certain as those from the river; one is as certainly a constant running stream as the other.

If the stream formed by the branches had flown in a small thread continually down the valley and over a point occupied by the embankment, and the railroad company had created a culvert sufficient only to carry off the water of the ordinary run, and insufficient to hinder overflows by increased volumes of water from rain, melting snow, etc., it would be responsible in damages for the failure. It was the duty of the defendant in the construction of its road-bed to provide against the known habits of these streams. It is no defense for it to say that it was only in extraordinary times the injuries now complained of could result. The rises in the waters had for all time occurred at intervals before the building of the road, and it was to be conclusively presumed they would occur afterwards from similar causes.

In Addison on Torts, Wood's edition, p. 95, it is said: "Land cannot be cultivated or enjoyed unless the springs which rise on the surface and the rains that fall thereon be allowed to make their escape through the adjoining and neighboring lands. All lands, therefore, are of necessity burdened with the servitude of receiving and discharging all waters which flow down to them from lands on a higher level, and if the owner or occupier of the lower lands interposes *artificial* impediments in the way of the natural flow of the water through or across his lands, and by so doing causes the higher lands to be flooded, he is re-

spon-ible in damages for infringing the natural right of the possessor of such higher land to the natural outfall and drainage of the soil, unless he has gained a right to pen back water by contract, grant or prescription. So if the proprietor of the higher lands alters the natural condition of his property, and collects the surface and rain-water together at the bottom of his estate and pours it in a concentrated form and in unnatural quantities upon the land below, he will be responsible for all damages thereof caused to the possessor of the lower lands."

We think this case falls within the rule, because the land could be cultivated and the crops saved but for the artificial impediment, the embankment. The natural right of the plaintiff to the natural outfall and drainage of his soil has been infringed by the building of defendant's road across the valley in the manner it was built and still remains. The defendant has altered the natural condition of his property (the right of way), and collects surface and rain-water together at the boundary of its estate and pours it in a concentrated form and in unnatural quantities upon the land above.

The right of way to the land upon which the road is constructed, together with a space of one hundred feet on each side of the centre of said road as provided in its charter, endows it with no rights beyond those expressed. When these are exceeded the defendant becomes a trespasser. The rights given must be so exercised as to interfere as little as possible with the rights of the owner of the adjacent

land.   It was the duty of the defendant, in laying out and building its road, to have had an eye to these things and to have exercised such skill and care as was necessary to the preservation and protection of the rights and estates of others.   It is manifest that by the insertion of a culvert, the lands of plaintiff would have been left in as good and tenable condition as before.   To have made the culvert, was the right and duty of the defendant.   This it can still do.   In the plaintiff there is neither right nor duty to construct or change the building of the road.   The party that may and ought to make the change must make it, or answer for the damages resulting from its failure.

The language of Judge McKinney in the case of *Colcough* v. *N. & N. W. R. R. Co.,* 2 Head, 173, "that the remedy prescribed in the charter embraces not only 'just compensation' for the land taken, but likewise for all such incidental loss or damage as must necessarily or reasonably result from the appropriation of the land and construction of the road in the manner authorized by the charter," &c., is relied upon by counsel in support of the argument, that the possibility that, in seasons of extraordinary freshets, surface water would thereby be thrown back on the land in question, was one of the elements of damage resulting to the land as a consequence of building the road and embankment at the point in question.   If so, it was compensated for in the assessment of land damages, and cannot now be made the basis of an action.

It is unnecessary to attempt an analysis of the

language of Judge McKinney to ascertain the meaning of the author, as in the next paragraph he says: "The statutory remedy does not, however, contemplate or extend to damage or injuries to adjoining land *not authorized by the charter*, nor to damages resulting from carelessness, negligence or willful trespasses in the execution of the work."

It is insisted that as plaintiff was not the owner of the land at the time of the building of the road, but became so afterwards, he cannot recover in this action. This is answered by the fact, that at the time of his purchase he became owner of the fee in as full right and manner as his vendor had owned it, unincumbered by any right, claim or incumbrance in or on account of the defendant. Each overflow caused by the negligence, carelessness or want of skill of the defendant or its agents, is an independent wrong, and a cause of action for the damages resulting therefrom to the crops and other property of the rightful possessor of the soil or premises. In whatever manner the defendant obtained its road rights, it is restricted by the charter and the construction given to it by this court in the 2 Head case, to the land taken for road purposes. So, while the plaintiff took the land under his purchase burdened with the charter rights of defendant, there was no release to it from liability to damages for injuries subsequently resulting from its carelessness, negligence or want of skill in the building of the road. Nor is there any proof showing such acquiescence in or submission to the wrong on the part of plaintiff or his vendor as will

Railroad Company *v.* Staub.

estop the plaintiff from suing for wrongs resulting to his property. Besides, there is no pleading raising a question as to the right of the plaintiff to sue because of a want of title at the date of the erection of the embankment, nor is there pleading or proof as to length of time elapsing between the erection of the embankment and the commencement of this action.

The judgment is reversed, and judgment will be rendered here for the damages upon the agreed amount of $170 and costs.