RAILWAY COMPANY *v.* C. V. HIGDON.

(*Knoxville.*   September Term, 1903.)

1. **DAMAGES.** Measure of, for overflowing land by wrongful obstruction of water way.

Where a railway company, by the wrongful obstruction of a water way, causes the land of the adjacent owner to be flooded, in an action therefor the measure of damages to such owner is the injury occasioned up to the time the suit is instituted, and not the difference between the market value of the property before and after the obstruction was erected.   (*Post, pp.* 124-125.)

Cases cited and approved:   Carriger v. Railroad Co., 75 Tenn., 388; Harmon v. Railroad Company, 87 Tenn., 614; Nashville v. Comar, 88 Tenn., 416; Chattanooga v. Dowling, 101 Tenn., 342.

2. **SAME.** Same. Evidence of market value of land flooded before and after obstruction inadmissible. Rationale rule.

In an action to recover damages for flooding land by wrongful obstruction of a water way, evidence of the market value of the land before and after the erection of the obstruction is inadmissible.   Such evidence could only be competent upon the theory that the wrongdoing was to be continued, and therefore the property was permanently injured.   The wrongdoer will not thus be permitted to procure a license to continue his misconduct.   The injury is abatable and one not presumed to continue and therefore the damages recoverable from the wrongdoer are only such as have accrued before suit was brought and successive independent actions may be instituted for the subsequent continuance of the wrong, or a recurrence of the nuisance.   (*Post, pp.* 125-127.)

Case cited and approved:   Nashville v. Comar, 88 Tenn., 416.

3. **SAME.** Same. Evidence of injury subsequent to action brought, inadmissible.

In an action for the overflowing of plaintiff's land by an obstruc-
tion of a water way, causing a large accumulation of stagnant
water, injurious to health, evidence of plaintiff's sickness sub-
sequent to the institution of the suit, and attributable to the
unsanitary condition previous to the beginning of the action,
is inadmissible either to prove such condition or as a proof of
injuries sustained. (*Post, p.* 127.)

### FROM POLK.

Appeal in error from the Circuit Court of Polk
County.—N. Q. ALLEN, Judge.

C. G. HYATT, and CORNICK, WRIGHT & FRANTZ, for
Railway Co.

MAYFIELD & SON, for C. V. Higdon.

MR. CHIEF JUSTICE BEARD delivered the opinion of
the Court.

The defendant in error was the owner of three hun-
dred and twenty acres of land lying in Polk county, of
this State, on both sides of the Hiwassee river, extend-
ing from the foot of the mountain on the north side of
this river to the elevated ground on the south side. His
residence stood near the northwest corner of the tract,
and a few hundred feet from the north bank of the river.
Adjoining him on the west was the tract of one Sey-
mour, and on this was located a spring, the natural flow
of which was to the west, until, passing around the

Railroad v. Higdon.

point of elevated land which extended along the river
front, its stream emptied into the river.   The plaintiff
in error operated a line of railway extending from the
foot of the mountain a short distance west of the resi-
dence of the defendant in error, and, running in a south-
easterly direction in part over an embankment, it
reached the river, and, crossing that, was carried by tres-
tle and embankment until it reached the elevated land
on the south side of the river.

This suit was instituted to recover damages occa-
sioned, as is alleged, by the erection of this embankment
on the north side of the river.   The declaration avers
that by its erection the flow of waters from the spring
has been impeded, and that the water from the overflow
of the river has been caught between this embankment
and the foot of the mountain on the north side, and
held as in a *cul-de-sac,* and that the result has been the
formation of a stagnant and miasmatic pool, extend-
ing almost to the door of the residence, that has greatly
affected the health and comfort of the family of the de-
fendant in error.   It is also alleged that another effect
occasioned by this embankment is that the water that,
but for it, would have been unimpeded, has been thrown
in great volumes upon the land of defendant in error
on the south side of the river, and that increased cur-
rent has injured portions of this land by piling sand
upon it, and that its effect has been also to render wet
and unfit for cultivation a portion of his land on the
north side.   The defendant in error further claimed that

in the negligent construction of the piers upon which its bridge across the river rested, and in time of high tide, the force of the current in the river was greatly increased, and that the expense of operating a ferry which belonged to the defendant in error had been proportionately increased. For these various injuries sustained by him damages were asked in this suit against the railroad. The trial of the case resulted in a verdict and judgment against the company, and it has appealed.

The first error assigned is that the circuit judge permitted, over the objection of the defendant below, testimony to go to the jury as to the difference between the market value of the property of the plaintiff below, before and after the erection of the embankment. That this was error has been for a number of years settled by the rulings of this court. In such a case the question as to the proper measure of damages was considered and determined in the case of *Nashville* v. *Comar,* 88 Tenn., 416, 12 S. W., 1027, 7 L. R. A., 465. In that case the circuit judge had said to the jury that if they found that the market value of plaintiff's property had been permanently impaired "he would be entitled to recover the difference in market value of the property before and since the building of the sewer."

This direction was held to be error, and the case was reversed on that ground. As early as in the case of *Carriger* v. *Railroad Co.,* 75 Tenn., 388, it was held that each overflow caused by the injury, carelessness, or want of skill of the railroad to an adjacent property owner

Railroad v. Higdon.

was an independent wrong, and constituted a cause of action for the damage resulting to the crop or other property of such owner.   In other words, the court ruled in that case that each overflow inflicting injury was a recurring nuisance, of which the party suffering therefrom could maintain independent action.   So, in *Harmon* v. *Railway Co.*, 87 Tenn., 614, 11 S. W., 703, it was again ruled for a nuisance committed by company that the adjacent lot owner could recover damages accrued to him up to the time each action is instituted, and a recovery in one action would not bar a subsequent one brought for a continuance of the wrongs. The same principle is announced in *Chattanooga* v. *Dowling*, 101 Tenn., 342, 47 S. W., 700.

The case made by the declaration, and that which the testimony introduced tends to prove, was one of a nuisance arising from a failure on the part of the railway company to so use its property as to avoid, if possible, injury to its neighbor.   That this nuisance could be abated by the exercise of proper skill and the expenditure of money and labor is apparent.   All, on this record, which the company had to do was to construct a culvert through the embankment and expedite the accumulated water to resume its natural course.   A failure so to do was actionable negligence.

The objectionable testimony in this case could only be made competent upon the idea that the wrongdoing of the railway company was to be continued, and that it would not at any time remedy the defective or unskill-

ful work, and that thus the property of the plaintiff below was permanently injured. The effect of such a view, if announced, would be to confer a license upon the railway company to continue its wrong. This view was expressly repudiated in the cases referred to above. On this subject, in *Nashville* v. *Comar,* supra, it is said that the "weight of authority and the weight of reason alike condemn, as contrary to the public policies, any rule by which a wrongdoer may procure a license to continue his misconduct. Such a rule would, in many instances, operate as a method by which private property would be condemned to private uses against the will of the owner." Continuing, the court said: "It seems to us that the true rule deducible from the authorities is that the law will not presume the continuance of a wrong, nor allow a license to continue a wrong when the cause of the injury is of such a nature as to be abatable either by the expenditure of labor or money; and that where the cause of the injury is one not presumed to continue, that the damages recoverable from the wrongdoer are only such as have accrued before action was brought, and that successive actions may be brought for the subsequent continuance of the wrong or nuisance."

Upon an examination of this record, it is evident that the jury must have been controlled in reaching their verdict largely by the estimate which the witness gave in answer to the question asked him as to the market value. Outside of this answer with regard to the depre

Railroad v. Higdon.

ciation in market value of the property, the testimony as to the matters of special damage is exceedingly vague and unsatisfactory, and, so far as we can discover, furnished no safe guidance to the jury in reaching an intelligent result, and it cannot be otherwise than that the jury rested their verdict largely, if not entirely, on this incompetent evidence.

We think the circuit judge was also in error in permitting testimony as to the illness of the defendant in error, which occurred after the institution of this suit. This illness was attributed by the witness to the stagnant pool of water that had been created by the embankment near his residence.    The attorney of the defendant in error in offering this testimony, in answer to the objection made to its competency, said that he did not ask damages on account of such illness, but that he offered it for the purpose of showing the nature and condition of the water and of the land adjacent. The circuit judge held it competent for that purpose.    We think that such testimony should not have been offered at all for any purpose.    If this stagnant water had either injured the land or affected the health of the defendant in error after the bringing of the present suit, and the negligence of the railway had produced this effect, it was the subject of a new trial, and ought not to have been introduced for the purpose of affecting the issue in the present case.

For these errors the judgment must be reversed, and the case remanded for a new trial.