CINCINNATI, N. O. & T. P. Ry. Co. *v.* RODDY *et al.*\*

(*Knoxville.*   September Term, 1915.)

1. **LIMITATION OF ACTIONS.**   Flowage.   Damages.   Continuing damages.

Where a railroad ditch along the right of way is allowed to fill up by the road's negligence, throwing water upon plaintiff's lands, depositing gravel and cinders, a distinct right of action arises with each wrongful act in the overflow or submergence of plaintiff's lands due to the railroad's negligence in failing to keep open the ditch.   (*Post, pp.* 570, 571.)

Cases cited and approved:   Carriger v. Railroad, 75 Tenn., 388; Railroad v. Higdon, 111 Tenn., 124; Silsby Manufacturing Co. v. State, 104 N. Y., 569; McConnell v. Kibbe, 29 Ill., 485; Gabbett v. Atlanta, 137 Ga., 180; Knapp v. New York, etc., R. Co., 76 Conn., 311.

2. **LIMITATION OF ACTIONS.**   Flowage.   Damages.   Limitations.

Where defendant railroad, by allowing the ditch along its roadbed to become filled up, periodically inundated plaintiff's adjacent lands, depositing gravel and cinders, the only damages recoverable were those caused by the deposit of gravel within the period of the statute of limitations, taking the value of the land at beginning of the period as normal, although it was then covered with gravel deposited by previous floodings, as to which plaintiffs' causes of action were barred.   (*Post, pp.* 571-575.)

Cases cited and approved:   Railroad v. Brigman, 95 Tenn., 624; Love v. Railroad, 108 Tenn., 122; Railroad v. Matthews, 115 Tenn., 172.

Cases cited and distinguished:   Pickens v. Coal River Boom, etc., Co., 66 W. Va., 10; Lentz v. Carnegie Bros. & Co., 145 Pa., 612.

---

\*As to when the statute of limitation begins to run against action for damages to land on account of obstructing stream or surface water see notes in 20 L. R. A. (N. S.), 886, 25 L. R. A. (N. S.), 645.

FROM RHEA.

Appeal from the Circuit Court of Rhea County.—
FRANK L. LYNCH, Judge.

WRIGHT & JONES, for appellant.

GIVENS & RHEA, for appellees.

MR. JUSTICE WILLIAMS delivered the opinion of the
Court.

This suit was commenced July 14, 1914, by B. W.
and M. S. Roddy against the railway company to re-
cover damages done to a tract of land through which
the defendant's roadbed is constructed, it being alleged
that a ditch made by the company along its right of
way for the protection of the plaintiffs' farming land
by negligence was allowed to fill up, thus throwing the
flow of water out on their land and causing a deposit
of sand, gravel, and cinders to form thereon to its in-
jury.

The defendant company filed a plea of the statute
of limitation of three years, applicable to injuries to
realty.

Plaintiffs' own proof showed that the land was thus
caused to be abandoned as unfit for usual tillage about
fifteen years before the suit was brought; that all of
this land continued to be usable for pasturage until
about two years before the trial, when a part of same

became wholly unfit for any purpose, while another portion yet remained capable of use for grazing purposes. The condition grew worse as the land was overflowed from time to time and as the deposits were made over its surface.

The court of civil appeals properly reversed the judgment of the circuit court on account of the charge of the trial judge being too meager, contradictory, and confusing, and the cause was remanded for a new trial.

The only question discussed before us is the proper measure of damages to be applied in the retrial in the court below in view of the plea of the statute of limitation.

The court of civil appeals held that the measure of plaintiff's damages "is the reasonable rental value of the land during the three years next preceding the institution of this suit; that is, such rental value as they would have realized from it had the original wrong never been committed."

The case clearly falls within the rule of recurrent or continuing damages in force in this State under which a distinct right of action arises with each wrongful act in the overflow or submergence of plaintiffs' lands due to the negligence of the railroad company in failing to keep open the ditch. *Carriger* v. *Railroad,* 7 Lea (75 Tenn.), 388, 396; *Railroad* v. *Higdon,* 111 Tenn., 124, 76 S. W., 895.

Many cases lay down in broad terms the further subsidiary rule that so long and as often as such a recurrent cause of action arises the plaintiff is not barred

by the statute of limitation of a recovery for such damages as have accrued within the statutory period, although a cause of action based solely on the original wrong may be barred; the recovery in such case being limited to such damages as accrue within the statutory period before action brought. *Silsby Manufacturing Co.* v. *State,* 104 N. Y., 569, 11 N. E., 264; *McConnell* v. *Kibbe,* 29 Ill., 485; *Gabbett* v. *Atlanta,* 137 Ga., 180, 73 S. E., 372; *Knapp* v. *New York, etc., R. Co.,* 76 Conn., 311, 56 Atl., 512, 100 Am. St. Rep., 994; 25 Cyc., 1138.

The difficulty experienced by the court of civil appeals was in determining what "damages accrue" within the period of three years limited by the statute under the above rule which it recognized. The holding of that court finds support in what was said by way of argument in the case of *Pickens* v. *Coal River Boom, etc., Co.,* 66 W. Va., 10, 65 S. E., 864, 24 L. R. A. (N. S.), 354. In that case it appeared that the defendant had so erected its boom below plaintiff's property as to cause sedimentary deposits of sand to accumulate in the stream to the damage of plaintiff's mill property. The court held to the doctrine of recurrent injuries and that the statute of limitations began to run, not from the construction of the boom, but from the date when the damages accrued, and, further, that sediment so deposited within a period earlier than the period saved for action by the statute (five years for damages to realty in that state) was to be deemed an element operating to effect damages accruing with-

in the period limited by statute. It was said by the court:

"It is not material when the sand was deposited creating that condition which caused the damage. That condition or state of the stream coming from the construction of the boom, and that condition still continuing entitling Pickens to recovery, how is it material when the sand was deposited so it continued to work damage within the five years for which this suit was brought? . . . Pickens had the right to operate his mill in its original condition not only during the five years involved in the first suit, but also during the five years involved in the second suit, . . . and it is utterly immaterial when that sand was deposited, so it continued to operate in diminishing the working capacity of the mill."

We need not stop to inquire how the working capacity of a mill property, if the deposit were made on the plaintiff's property, can be distinguished in that attitude from the capacity of farm lands to produce crops, but the above case may be fairly said, in its argument at least, to sustain the judgment here under review. But is that case, if sound on its immediate facts, sound in its argumentation in the respect indicated or as applied to a case like this?

In *Lentz* v. *Carnegie Bros. & Co.,* 145 Pa., 612, 23 Atl., 219, 27 Am. St. Rep., 717, the plaintiff was the owner of a farm a part of which was along a creek into which defendants habitually dumped slate and slack depending upon the current and floods to carry it past

plaintiff's land and away. Beginning about twenty-five years before the commencement of the suit, the dumped materials by degrees were deposited on the land to its material injury. These deposits continued to be made within the statutory limitation period—six years in that State. The court held that the questions thus presented for jury determination were: What was the condition of the land of plaintiff six years before the writ was issued? Was it covered by the deposit complained of? Whether the situation had been made worse during the six years, and to what extent? Giving, as a reason why the measure of damages adopted by the court below was inapplicable, that it allowed a consideration by the jury of the land's value in its original condition, that is, before the deposits began to form, the court said:

"The defendant had pleaded the statute of limitations, and the inquiry was thereby limited to six years. The comparison which the testimony placed before the jury carried them back to a time when the stream was not polluted, and the slate and slack had not been deposited on the plaintiff's land. It brought to their notice, not the injury done in six years, but the changes made from the beginning of operations on Brush creek, which was nearly or quite a quarter of a century before the trial. While the learned judge told the jury that the plaintiff could not recover for an injury sustained more than six years before his action was begun, he permitted testimony to be given which brought the entire change in the situation of the plaintiff's flat

land to their attention and which contrasted its value in its original condition with its value in its present condition.''

This was held to be error.

The ruling on the point in any case that is to the contrary of the doctrine thus announced by the Pennsylvania court, we think, disregards a fundamental principle in the law of torts, viz.:

''A single tort can be the foundation for but one claim for damages. . . . All damages which can by any possibility result from a single tort form an indivisible cause of action. Every cause of action in tort consists of two parts, to wit, the unlawful act, and all damages that can arise from it. For damages alone no action can be permitted. Hence, if a recovery has once been had for the unlawful act, no subsequent suit can be maintained. There must be a fresh act, as well as fresh damages.'' 1 Freeman on Judgments, sec. 2111; *Railroad* v. *Brigman*, 95 Tenn., 624, 32 S. W., 762; *Love* v. *Railroad*, 108 Tenn., 122, 65 S. W., 475, 55 L. R. A., 471; *Railroad* v. *Matthews*, 115 Tenn., 172, 91 S. W., 194.

For these reasons, in cases such as the one under review, the cause of action is not referable to the original obstruction of the ditch, but to the subsequent several recurrent tortious acts of overflow which affected injuriously the lands of the plaintiff, as fresh acts giving rise to fresh damages.

Each trespass or fresh tortious act thus producing injury constitutes a cause of action, and this is suscep-

tible of being barred by the statute of limitations. When, for example, an overflow occurs on a date prior to the period of limitation, that wrongful act and equally its result, the damage done, are barred when the applicable statute is pleaded.

It is illogical, therefore, to treat such items of injury or damage as projected forward into the period of limitation as being themselves factors contributing to further injuries, as acts of wrong, since they are but the result of precedent acts, confessedly barred. When a cause of action is barred, it is barred in its entirety, not as to only one of the two elements of which it thus consists. The statute puts at repose all that preceded its period that was actionable.

The court of civil appeals was in error on this point, and its judgment will be modified, and the cause be heard on the remand in accordance with the ruling embodied in this opinion.