TENNESSEE CENTRAL RAILWAY COMPANY, Plaintiff in Error, v. R. H. ASKEW, Defendant in Error.

Middle Section. March 29, 1930.

Petition for Certiorari denied by Supreme Court, June 28, 1930.

Holladay & Holladay, of Cookeville, and Walter Stokes, of Nashville, for plaintiff in error.

Worth Bryant and J. A. Drake, of Cookeville, for defendant in error.

DeWITT, J.    The Tennessee Central Railway Company has appealed in error from a judgment against it, based upon the verdict of a jury, in favor of R. H. Askew for $1250 for damages to his property from the flooding of a stream which broke through and destroyed an embankment of the railroad and poured over his land. The claim of liability was based upon negligent construction of the railroad in having too small a culvert under the embankment or fill, for the water to go through.

The plaintiff Askew owned a residence situated upon a small tract of land near the railroad where the embankment stood, and where an ordinarily small stream called Mine Lick Creek ran through the culvert and near to plaintiff's property. The culvert was an almost square structure made of rocks, the opening on the lower side being about 4½x6 feet and on the upper side about 2½x6 feet. The fill or embankment was of dirt and was about 30 feet above the level of the stream.

Early in the morning of June 29, 1928, after a rain and storm almost unprecedented, a large volume of water came down the stream to this place and the culvert being too small to carry it through, the embankment was washed away. The flood and debris struck the house of the plaintiff, carried it off and ruined it, together with his household goods and other personalty.

The Railroad Company defended on the ground that it was not guilty of violation of duty in maintaining such a culvert at that place, that the flood was so great that it could not have been anticipated and that the damage was caused by the act of God. The plaintiff contended that the culvert was inadequate, that this had been demonstrated by previous floods admittedly not so great, and that the Railroad Company should have provided such a bridge or culvert as

would allow the water to pass through without damage to plaintiff's property, even under such circumstances as those which did occur.

In Carriger v. Railroad Co., 7 Lea, 388, it was held that it is the duty of railroad companies to provide by culverts or other means for the safe passage of accumulated surface water, and they are liable in damages for injuries to adjacent lands by overflow or back water, caused by their neglect or failure to perform this duty; and that they must provide against the recurrence of unusual and extraordinary accumulations which have once happened, and are conclusively presumed to know the habits of streams adjacent to the tract. The court said:

> "If the stream formed by the branches had flown in a small thread continually down the valley and over a point occupied by the embankment, and the Railroad Company had created a culvert sufficient only to carry off the water of the ordinary run, and insufficient to hinder overflows by increased volumes of water from rain, melting snow, etc., it would be responsible in damages for the failure. It was the duty of the defendant in the construction of its railroad bed to provide against the known habits of these streams. It is no defense for it to say that it was only in extraordinary times the injuries now complained of could result. The rise in the waters had for all time occurred at intervals before the building of the railroad, and it was to be conclusively presumed they would occur afterwards from similar causes."

These rules have been consistently followed in later cases. Railway v. Hays, 11 Lea, 382; Harmon v. Railway, 87 Tenn., 614, 11 S. W., 703; Railroad v. Higdon, 111 Tenn., 121, 76 S. W., 895; Railway v. Roddy, 132 Tenn., 568, 179 S. W., 143. The evidence is undisputed that this was the heaviest flood ever known to have occurred at that place. The rainfall was unprecedented. In that section of the country mills and houses were washed away, the Cookeville Power dam some miles distant was destroyed, and a number of persons were drowned. The Railway Company itself sustained damage to the extent of $42,000. The railway was constructed in 1890 and for five years there was a trestle over this crossing of Mine Lick Creek. In 1895 the rock culvert was constructed and the ravine was crossed with a fill of earth above and around the culvert. After this flood the embankment and culvert were replaced with another trestle.

But there is also evidence that this little creek above the railroad drains a territory one mile by two miles in area; that some years before this flood came there was another flood at that place which washed out a part of the fill after backing the water up about two hundred yards, and the culvert collapsed. About the year 1902 a somewhat similar occurrence took place. On these occasions the

water arose to a point ten feet high on the embankment and covered the land above the fill for a considerable area; and the culvert was insufficient to carry off the water in its natural flow.

From this testimony the jury could reasonably infer that the Railway Company had notice that the culvert was not large enough for necessary purposes that might have been anticipated; and that it was therefore negligent in failing to provide a means for passage of the water according to its natural flow in such a condition of flood. There was also evidence warranting the conclusion that had such adequate provision been made the plaintiff's property would not have been injured by this flood. In March, 1929, after the erection of the new trestle, another flood about as large as the one in question came at the same place and did virtually no damage, as the water ran naturally through the trestle as it fell and was not dammed up. The Trial Judge correctly refused to instruct the jury, upon request submitted, that if they should find that the Railway Company had maintained that culvert in the conditions described since the year 1890, or thereabouts, and it was sufficient to care for the water coming from above it, then the Railway Company had established a prescriptive right to maintain its fill and culvert in its then condition, and the plaintiff would not be entitled to a recovery. The Railway Company however, insisted, and does insist that the culvert never did prove insufficient for all purposes that could be anticipated. The burden was on the Railway Company claiming a prescriptive right to show that the culvert did prove insufficient and when it first proved insufficient, and to show that more than twenty years before the cause of action arose the embankment and culvert actually caused overflows, and that such condition continued throughout that period. Davis v. Louisville & Nashville Railroad Company, 147 Tenn., 1, 244 S. W., 483. It does not appear that the Railway Company continually caused water to be backed upon the upper land, or made use of such claim in such a way as to indicate that a right was claimed. A prescriptive right is founded upon the supposition of a grant. The Railway Company could not be heard to deny that the culvert was insufficient and then insist that because of its insufficiency a prescriptive right to back up the water above the culvert had been acquired.

The Trial Judge was not in error in his definition of proximate cause to the jury. He said:

"The proximate cause of an injury is that act or omission which causes or fails to prevent the injury. It is the act or omission occurring or concurring with another which, had it not happened the injury would not have been inflicted."

It is insisted that by these instructions the jury were misled into concluding that in this particular case the damage to the plaintiff's property was occasioned by negligence of the Railway Company

concurring with the act of God. The issue as to negligence of the Railway Company was a question for the jury. The rule is that where two causes proximately contribute to an injury sued for and for only one of which the defendant is responsible, neither party being responsible for the other, the defendant is still liable. Columbia & Big Bigby Turnpike Co. v. English, 139 Tenn., 634, 202 S. W., 925.

The insistence that the court erred in permitting the plaintiff himself to argue his case before the jury, cannot be considered, for it appears that no exception was taken thereto, and there is no evidence in the record as to what the plaintiff did say to the jury.

It is insisted that the court erred in permitting the plaintiff to amend his declaration during the progress of the trial so as to change the date on which the alleged injury occurred from June, 1927, to June, 1928, and to sue for damages to a well and to five fruit trees. It is claimed that this amendment came too late and materially changed the cause of action of the plaintiff, requiring the defendant to defend an entirely different suit from that set out in the declaration. We do not think that the Trial Judge abused the discretion vested in him in permitting the amendment to be made. The amendment was made during the taking of the testimony, when the true date, June 28, 1928, had been proved and the amendment so as to show this true date in the declaration could not have occasioned any surprise to the defendant. The inclusion of damages to the well and fruit trees manifestly worked no injustice to defendant, for the amount awarded by the jury was considerably less than the amount of damage which the proof showed that the plaintiff had sustained other than that to the well and the fruit trees.

It results that all of the assignments of error must be overruled and the judgment of the Circuit Court affirmed. Judgment will be entered in this court in favor of the defendant in error against the plaintiff in error for the sum of $1250, with interest from the date of the judgment of the Circuit Court, and all costs of this cause. The costs of the appeal will be adjudged also against the surety on the appeal bond.

Faw, P. J., and Crownover, J., concur.