On September 30, 1927, T.J. Wilson, the owner of a tract of land near the right of way of the Louisville Nashville Railroad Company, filed the bill in this cause against said Company to recover damages for diversion of water from its natural course on to his land; and to enjoin the defendant Company to construct and maintain a ditch and culvert that would carry off all surface and flowing water, so that it would not damage complainant's spring, lands, crops, grass, road, etc. Upon the final hearing the mandatory injunction thus prayed for was granted and a recovery of $250 was awarded as damages.
A reference was ordered to the Clerk and Master to take proof and report:
 "1. The cause of the injury, if any, to complainant's property sued for herein."
Upon this the Master reported:
 "That the injury sued for was caused by the defendant Railroad Company permitting its ditch to fill up along and on its right of way, and permitting its culverts to fill up, which ditch and culverts being too small to carry off the surface water of ordinary rains, and on account of said condition of said ditch and culvert being filled up and too small to carry off the water, that runs into the ditch and through the culvert, thereby overflowing the complainant's lands, spring and spring house many times during ordinary rains from September, 1924, to September, 1927.
 "2. The amount of damages, if any, to said property, and in ascertaining this damage, he will be governed by the rule announced in the case of Nashville v. Comar, reported in 4 Pickle, 415, and the case of Railroad v. Higdon, reported in 3 Cates, 121."
The Master fixed the damages at $750, but, upon exception, the Chancellor reduced it to $250.
There is abundant evidence to sustain these concurrent findings, that complainant's property was damaged from the aforesaid causes, and that the damages amounted to as much as $250. The Railroad Company, however, pleaded an accord and satisfaction, denying all claim for damages and right to any mandatory injunction. It also pleaded the statutes of limitation, of three, six and ten years. These defenses were based upon the theory that the defendant had previously, in settlement of litigation with complainant, paid a sum as permanent compensation, or damages, for the injuries complained of. *Page 329 
The preceding owner of the railroad was the Lewisburg and Northern Railroad Company. The railroad was constructed in 1913 by said Company. T.J. Wilson was the owner of the tract of land here involved, bounded on the west by the Farmington and Fayetteville Turnpike. The railroad track was built on and near the bed of the turnpike and the turnpike was removed to the west side of the railroad track. The land is hilly or rolling, except the extreme western part near the railroad, where it is low and level, and on this level portion is a spring about thirty feet from the right of way of the railroad. Before the railroad was constructed, all of the water which fell on Wilson's land, flowed westwardly toward the turnpike. There was a ditch or gully running along the northern boundary of this land, running through a culvert under the turnpike at the northwest corner of the land and down the western side of the turnpike to a creek. This ditch carried a large volume of water during heavy rains.
On June 13, 1911, the Lewisburg and Northern Railroad Company purchased of Wilson a strip of said land, containing .33 of an acre, and a separate contract was entered into, with the following provision (after reciting the purchase):
 "In consideration of the premises, the said Railroad Company binds itself and agrees to so construct its line of road so as not to damage, injure or destroy the said spring of water, and in the event that it becomes necessary for the said Railroad Company to relocate the Farmington and Fayetteville turnpike, such relocation shall be so made as not to damage said spring."
In February, 1914, T.J. Wilson instituted two suits in the Circuit Court of Rutherford county against the Lewisburg and Northern Railroad Company and certain contractors, for damages to his said property. One suit related to the spring and was based upon breach of the aforesaid agreement. The other suit was in tort for damage to a well, flooding the land, impairment of ingress and egress. In said suit the material averments of the declaration were as follows (after describing the properties with relation to each others):
 "That the defendants had filled in the ditch that carried the surface water across the pike and constructed in lieu thereof a wide and shallow ditch along the entire front of plaintiff's property; that this ditch was intended to convey all the surface water that formerly flowed across the pike; that the surface water had thus become diverted from its original channel, causing overflows upon the land; that the injuries resulting therefrom were of a permanent nature. *Page 330 
In December, 1915, these two suits were settled by the payment of the sum of $150 to T.J. Wilson. The contention is made that by this settlement the plaintiff waived all claim to future damages of this nature; that the settlement was permanent and precluded any other claim.
Permanent damage had unquestionably been inflicted, but it was not all the damage which has been suffered. The evidence shows that the Railroad Company did not wholly remedy the condition. In 1923 it abandoned the ditch which it had maintained (and which was insufficient), filled it, and cut a ditch across the old turnpike westward from plaintiff's gate and placed under the turnpike a small culvert. This ditch was smaller and less efficient and the culvert was insufficient. The Railroad Company has permitted this ditch and culvert to become filled with dirt, gravel, etc., and the ditch to be grown up in weeds and bushes — so that little, if any, water has run through said ditch and culvert.
In White v. N.C. St. L. Ry., 1 Tenn. App. 474, it was said:
 "Cases such as Railroad v. Higdon, 111 Tenn. 121, Railroad v. Hays, 11 Lea, 382, and Carriger v. Railroad Company, 7 Lea, 388, certainly indicate that the duty of maintaining the railroad in such manner as not to obstruct the natural drainage, is a continuing duty. In fact, the very basis of the decisions allowing recurring damages, instead of permanent damages, is upon the theory that, where for instance a culvert is insufficient, or where there is no culvert, the defendant will not continue to maintain its roadbed in this condition, but will remedy the same."
Upon the facts, the defenses of accord and satisfaction, and of the statute of three years (the only one otherwise applicable) cannot be sustained. Since the former settlement a new condition has been created, a new cause of the damage. In making a settlement for permanent damages already incurred, the Railroad Company did not acquire a permanent right to damage the property.
Even if the condition of the land and the spring is the same as existed more than three years before the filing of the bill; even if the damage which complainant now suffers was not begun within the three years, the rule of recurrent or continuing damages entitled the complainant to recover. Under this rule a distinct right of action arises with each wrongful act in the overflow or submergence of plaintiff's lands, due to the negligence of the railroad company. See Ry. Co. v. Roddy, 132 Tenn. 568, 179 S.W. 143, and cases cited. In the Roddy case it was said:
 "In cases such as the one under review, the cause of action is not referable to the original obstruction of the ditch, but to the subsequent several recurrent tortious acts of overflow which *Page 331 
affected injuriously the lands of the plaintiff, as fresh acts giving rise to fresh damages."
Of course, during the three years there were fresh overflows, for the inadequate condition of the ditch and culvert maintained by the railroad company has been the same during that period. The railroad company not only owed it to the adjoining landowner not to obstruct or divert the natural flow of the water, but it also undertook in writing not to damage the spring. The evidence is that such diversion causes a considerable pond of water to stand in and around the spring, and the spring, formerly a very good and useful one, is unfit for use. The railroad company has, during the three preceding years, continually violated its duty.
We think also that this was a proper case for the issuance of the mandatory injunction. Unless the injurious conditions are remedied, the damage to the land and the spring will continue. Since, under the law, the owner can only recover "recurring damages," he can never recover to the full extent of impairment of value of his land, but will have to continue indefinitely to bring one suit after another, each seeking to recover the temporary damages up to the time of bringing suit; and therefore he has no adequate remedy at law. White v. Ry., 1 Tenn. App. 467, and cases cited. That case, well-reasoned, replete with pertinent authorities, and fully approved by the Supreme Court, is ample authority for the Chancellor's exercise of his discretion, under all the circumstances, in granting the very extraordinary writ of mandatory injunction.
It results that all of the assignments of error must be overruled. The decree of the Chancery Court is affirmed. A decree will be entered in this court in favor of the complainant against the defendant for the sum of $250, with interest from the date of the decree of the Chancery Court, and all the costs of this cause.
Faw, P.J., and Crownover, J., concur.