YAZOO & M. V. R. Co. *v.* R. J. SULTAN.

[63 South. 672.]

1. RAILROADS. *Damages from construction and maintenance. Duty to mitigate damages. Landlord and tenant. Lease. Construction. Injuries from floods. Pleading.*

Though it is the duty of a party to protect himself from the injurious consequences of the wrongful act of another, if he can do so by ordinary effort and care or at moderate expense, still

ordinary care does not require a tenant of a plantation to dig a ditch to protect his crop from overflow caused by a railroad obstructing the natural flow of water.

2. LANDLORD AND TENANT. *Lease. Construction.*
   Without authority from his landlord, a tenant has no right to construct a ditch on the rented property and a lease providing that the tenant should keep all ditches open and ditch banks clean, gave no such right as such provision only referred to ditches already constructed.

3. DAMAGES. *Mitigation. Pleading.*
   Matters in mitigation of damages merely, may be given in evidence under the general issue, for by that plea the defendant puts upon the plaintiff not only the proof of his injury but its extent.

APPEAL from the circuit court of Bolivar county.

HON. T. B. WATKINS, Judge.

Suit by R. J. Sultan against the Yazoo & Mississippi Valley Railroad Company. Judgment for plaintiff for one hundred dollars and defendant appeals and plaintiff cross appeals.

The facts are fully stated in the opinion of the court.

*Montgomery & Montgomery,* for appellant.

The only question presented on the direct appeal of the railroad company in this case is this: Where land has been taken either by eminent domain proceedings or by deed, by the railroad company for the building and operation of its line of railroad and the roadbed has been built on the same and standing there for years, obstructing no watercourse, obstructing no drain, obstructing no ditch nor channel in which the water runs and not collecting the water in any ditch and precipitating it on the land of a person, but merely obstructing the natural flow of water on the surface of the earth on the natural slope of the land, can any person lease a piece of land, on which for many years, the natural flow of water on the earth has been obstructed, and plant on it crops and make the railroad company pay him damages because the water

flowing on the surface of the earth cannot get by the embankment of the railroad, and overflow and drowns out his crops.

If he can, then the action of the circuit court in refusing the instructions refused for the defendant was right. If he can't, then those instructions should have been given. In fact, the peremptory instruction should have been given to the jury, to find for the defendant because it is not contended in this case that there has been a drain of any kind obstructed, or there has been any water collected by the railroad company and precipitated on any one's land; but it is only contended that the railroad itself, which has been there for many years, obstructs the natural flow of the water on the surface of the earth. If the court should not have given the peremptory instruction for the defendant, certainly the fourth instruction asked for by the defendant should have been given and the case should be reversed in the direct appeal.

It is not shown in the evidence that the railroad company in constructing its roadbed failed in any duty and it is a principle of law, on which it is, I assume, not necessary to cite authorities; that in taking land for the purposes of a railroad company and in paying damages in eminent domain, the landowner is allowed prospective damages for the building of the roadbed, which may obstruct the natural flow of the water on his land. That is assumed to have been taken into consideration whether the land is taken in emiment domain or is taken by deed from the landowner. It is not contended in this case that Jones Bayou was obstructed in any way in its channel and the valley surrounding it is not to be taken as a part of the watercourse. See *Railroad Company* v. *Smith,* 72 Miss. 677.

In the case of *Sinai* v. *Railway Company,* 71 Miss. 547, the question raised was that the railroad company by the construction of its embankment had caused the water of

Otter Bayou to overflow its bank and be thereby dammed up and thrown back on the plantation of Sinai.

In the case of *Railroad Company* v. *Davis*, 73 Miss. 678, in discussing and distinguishing the Sinai case, our supreme court says: "It is not the law that the defendant was under the duty of so constructing its roadway as to preserve the land of the plaintiff from all injury by reason of water to which it would not have been subjected in its natural state. Plaintiff's farm is situated so as to be subjected to a sort of ebb and flow inundation from the eastern waters of Big Sandy Creek and others from the western waters of the Yalobusha River. Through this basin, this company, either by contract or condemnation, obtained a right to locate its roadway. Power is conferred upon it by the legislature to build the road conditioned only that by contract or condemnation proceedings, it should compensate the owners whose property was to be taken. This it has done to all the owners of the land, with the right to use it as such for the legitimate purposes for which it was secured. For all injury flowing from the lawful and proper construction of its roadway, it has already paid.

"In condemnation proceedings, all special damages present and prospective, to the owners of land, resulting or to result from the proper constructing and maintaining its road, constitute as to such owners, a single indivisible cause of action and it is conclusively presumed that the commissioners in making the award in case of condemnation, have considered and awarded damages for all such injuries and if the way has been secured by contract with the owner that he has demanded and received full compensation therefor. And it may reasonably be supposed that if a proper construction of the road will subject adjoining land to overflow, or obstruct its drainage, such damage should be estimated and allowed for." See, also, authority cited on page 693 of the opinion. We quote further from this opinion, the court says: "It is

evident that, to construct a road on lands situated as were the plaintiff's, would inevitably, to some extent, obstruct the body of vagrant water, composed of both overflow and surface water, to which, in a state of nature, the plaintiff's lands were subject.  The roadway, except where it crosses the defined banks of the streams and bayous, is in no proper sense within a watercourse.  The alluvial lands of the Yazoo and Mississippi Delta were all built up by the deposits from the rivers.  In a state of nature it is all subject to overflow, and if the roads in that country are to be so constructed as to preserve the nearest possible approach to a natural condition of waters, they must be placed upon trestles from one end of the valley to the other.''

The only possible conclusion in the case at bar is, not that the waters of Jones Bayou are dammed at all, nor that any stream of watercourse or even a swale through which the water flows in a channel has been obstructed, but simply that the roadbed interferes with the natural flow of the rain water on the surface of the earth at one place, to wit:  a low, flat depression in no sense a watercourse.

See also *Hatchett* v. *Railroad Company,* 1 Miss., decisions page 38, in which it is held by our supreme court that the railroad company has the right to deal with the land condemned as it deems most beneficial to it.  See, also, *Illinois Central Railroad Company* v. *Miller,* 68 Miss. 760.  The case *A. & M. V. R. R. Co.* v. *Beard,* 48 So. 405, we submit is a case in point with the case at bar.  Compare instruction number 4 asked for by the defendant, appellant, in this case with instruction number 27 asked for by the railroad company in the *Beard case, supra,* and they will be found to be in exactly the same language, and yet the court reversed the Beard case, because of the refusal of that instruction and we submit that the language of Mr. Justice FLETCHER in delivering the opinion of the court in the Beard case con-

clusively establishes the point that we are now contending for and this case must be reversed for the refusal of instruction number 4 for the defendant.

In the case at bar, we also insist that the court should have given the peremptory instruction for the defendant, because it does appear in this case that there is absolutely no conflict in the testimony and the obstruction complained of was an obstruction merely of surface rain water, and therefore, the appellee has no case at all.

*Bedford, Allen & Bedford,* for appellee.

The sole question raised by the direct appeal is simply whether or not a railroad company is liable for damages caused by the obstruction of any water not in a regular stream, regardless of the particular facts of each case. Appellant's view of the case is that in order for the railroad to be liable, in any event, its embankment must obstruct the flow of water in a stream or other natural watercourse. This in the very teeth of every adjudicated case in Mississippi. The law in Mississippi is well settled that when the contour of land is such that a railroad company must dam the natural outlet of surface water from farm lands, and the railroad company can prevent the injury without substantial additional inconvenience, expense or danger, they must prevent such injury. This is the rule laid down in the first adjudicated case in Mississippi on the subject: *Sinai* v. *R. R. Co.,* 71 Miss. 547, 14 So. 78. The Sinai case has been, so far as we can find, uniformly approved and followed. *R. R. Co.* v. *Paine* (Miss.), 19 So. 199; *R. R. Co.* v. *Beard,* 93 Miss. 294, 48 So. 405; *R. R. Co.* v. *Davis* (Miss.), 19 So. 487; *R. R. Co.* v. *Miller* (Miss.), 10 So. 61; *Ry. Co.* v. *Lackey,* 72 Miss. 881; and *R. R. Co.* v. *Miller,* 68 Miss. 760.

The only question raised by the cross appeal is as to the proper measure of damages. The court below per-

mitted the defendant to introduce testimony as to the probable cost of a ditch on land adjacent to that of plaintiff, sufficient to drain such adjacent land and then instructed the jury, by instruction number 2 for the defendant below, that they could not find for the plaintiff for more than it would have cost that plaintiff to have dug a ditch in the spring of 1909 into Jones Bayou and thereby relieve the land the drainage of which was complained of from the rain water and that if the jury believed, from the evidence, that such ditch could have been dug, giving the plaintiff as complete drainage through the said land as it would have had without the roadbed of the defendant, then it would have been his duty to have dug the ditch and protect himself, and the measure of his damage, if he could recover at all, would be and was the cost of the ditch from the evidence.

The admission of this testimony and the giving of said instruction number 2 for the defendant was, we contend, error, because: First, even the owner of land cannot be required to lessen the damage by cutting a ditch, if in any event, certainly not under such proof as was made by the defendant in the case at bar. The owner of land is entitled to the enjoyment of all of his property and cannot, by reason of the tortuous act of another be required to mitigate his damage by the destruction of a part of his own property. In such a case, the land occupied by the ditch would be totally destroyed for farming purposes. Furthermore, one is not under the obligation to deface and disfigure his property to mitigate the damage caused by the wrongful act of another. Suppose, instead of farming land, this was valuable residential property; would the owner be required to cut an unsightly ditch to dispose of the water accumulated by the wrongful act of the railroad company? Even if, under some circumstances, it would develop upon the party injured, to cut a ditch to lessen the damage, we submit that the defendant's proof falls far short of making out

such a case. In the first place it is not shown that a ditch, cut after the plaintiff in the case at bar discovered the effect of the railroad embankment upon his drainage, would have saved any part of his crop in the year 1909, the obstruction to drainage and the impounding of water on his land coming too late in the year to enable him to foresee the impending damage. Nor was it shown that the plaintiff was able financially to cut such a ditch; nor that the cutting of the ditch would not damage contiguous land; nor that the plaintiff knew in time (in 1909) that damage would result from the obstruction. All this was a necessary part of the defense, if such a defense is ever valid.

It is said in *Fowle* v. *Park,* 48 Fed. 789, that if the courts can protect the rights of the injured party, he must resort to them instead of using his individual efforts to counteract the wrong being done. 1 Sutherland on Damages (3 Ed.), sec. 90.

Now to hold that Sultan was under the obligation to cut this ditch in the spring of 1909 puts him in the attitude of having to gamble on the difference in damage between the cost of cutting a ditch and that resulting from the impounding of the water.

Second, even if the owner of land is under the obligation, in a case like the one at bar, to mitigate the damage by the cutting of a ditch, this duty does not devolve upon a mere tenant. The tenant, in the first place, has no right to do anything to change the identity of the estate, to change the fee. He cannot, without his landlord's consent, remodel a house, even though such remodeling enhances the value of the house: *Brock* v. *Dole* (Wis.), 28 N. W. 334; *R. R. Co.* v. *Bordsky,* 21 S. W. 1011.

We especially call attention to the case of *R. R. Co.* v. *Ryan,* 21 S. W. 1013, decided the same day as the *Bordsky case, supra,* for the reason that it expressly makes a distinction between the duty of the owner of land and a tenant under circumstances very similar to those of the case at bar.

We have been unable to examine a case given in the Century Digest, as we cannot obtain the book here, but the syllabus given in the digest, vol. 48, sec. 2369, of the case of *Kankakee & S. R. R. Co.* v. *Horan*, 23 Ill. App. 259, is as follows: "Where a railroad company obstructs the natural flow of surface water to the injury of a farm it is not the duty of a tenant thereof to mitigate the injury by digging a ditch to drain off the water."

We submit, therefore that on both reason and authority the giving of the second instruction for the defendant was error.

Third, it will be noted that the only plea filed by the defendant was the general issue. We think that even though the contention of cross-appellee as to the cutting of the ditch should be held correct, the defense could not be availed of under a plea of the general issue, but that a special plea should have been filed.

*In conclusion*: The defendant, under a plea of the general issue, proved the probable cost of ditching the witness, S. C. Taylor's, land; the proof shows (see Alexander's map) that plaintiff's land was one and two-tenths feet lower than Taylor's; there is no proof as to the distance from plaintiff's lowest land to Jones' Bayou; no proof as to the cost of ditching plaintiff's leased land; no proof that plaintiff was cognizant of the fact that he would be damaged until late in the cultivating season of 1909 and no proof that a ditch, cut after he was so apprised, would have lessened the damage in 1909; no proof that he was financially able to cut a ditch; no proof that he could have spared the time from his working of his other crop to cut the ditch himself; no proof to relieve him of being in the attitude of gambling on possibilities in cutting the ditch; no proof that the cutting of a ditch would not damage contiguous land; in short, no proof whatever except as to the probable cost of ditching S. C. Taylor's land, which lay north of plaintiff's.

While we do not think the question of the measure of damages other than as to whether or not it is limited to

the cost of cutting a ditch, is raised by the appeal or contended for by appellant's (cross-appellee) we give below the authorities as to the measure of damages, to wit: R. R. *Company* v. *Hubbard,* 85 Miss. 480, 485; Suther. on Damages (3 Ed.), secs. 1023 and 1049; R. R. *Co.* v. *Lackey* (Miss.), 16 So. 909; R. R. *Co.* v. *Davis,* 73 Miss. 678; R. R. *Co.* v. *Borsky* (Tex.), 21 So. 1911; Monographic note to R. R. *Co.* v. *Sayers,* 27 L. R. A. (N. S.) 168.

Reed, J., delivered the opinion of the court.

This is an action brought by R. I. Sultan against the Yazoo & Mississippi Valley Railroad Company to recover damages to crops caused by the obstruction of surface water. Mr. Sultan was the lessee for a term of three years of certain land in Bolivar county, situated along the line of the Yazoo & Mississippi Valley Railroad, and between the right of way of the railroad and Jones Bayou.

It appears that the roadbed or embankment of the railroad caused an obstruction in the flow of the surface water, so that something over six acres of the land leased and cultivated by Mr. Sultan was overflowed, and the crops thereon were totally destroyed in the year 1909, and almost entirely destroyed in 1910. He estimated his loss for the two years at something less than five hundred dollars.

It is in testimony that an opening or culvert through the railroad embankment could have been constructed at the cost of about seventy-five dollars, and that this would have allowed the water impounded by the obstruction to pass away, and that such culvert would have made no difference as to the safety of the roadbed for the general travel over it. It is also shown in the testimony that the land could have been sufficiently drained by the digging of a ditch from the railroad track to the bayou, and that the ditch would have cost not more than one hundred dollars.

To the declaration filed by Mr. Sultan, the railroad interposed a plea of general issue. No other plea was filed.

The court refused to grant a peremptory instruction for the defendant. Instruction number 2 for defendant was given by the court, and reads as follows: "The court instructs the jury for the defendant that in this case they cannot find a verdict for the plaintiff for more than it would have cost the plaintiff to have dug a ditch in the spring of 1909 into Jones Bayou and thereby relieved the lands, the drainage of which is complained, from the rain water, and, if the jury believe from the evidence that such a ditch could have been dug through the plaintiff's land, giving the plaintiff as complete drainage through the said land as would have been without the roadbed of the defendant, that then it would have been his duty to have dug a ditch, and protected himself, and the measure of his damage, if he can recover at all, would be and is the cost of the ditch from the evidence."

The jury returned a verdict in favor of Mr. Sultan, and assessed his damages at one hundred dollars. The railroad company appealed on the question of any liability whatever, and a cross appeal was taken by Mr. Sultan, claiming that the court erred in admitting evidence of the cost of digging a ditch, and in giving of instruction number 2 above set forth.

The law in this state touching the liability of the railroad company for damages caused by the obstruction of surface water by its roadbed or embankment, as in this case alleged, is well settled. *Sinai* v. *Railroad Co.*, 71 Miss. 547, 14 So. 87. See, also, the case, recently decided by this court, of *Thompson* v. *Mobile, J. & K. C. R. Co.*, 61 So. 596.

On the direct appeal we see no error by the trial court in ruling on the question of the railroad company's liability.

In his cross appeal, Mr. Sultan contends that the court erred in giving instruction number 2, and in holding that

the measure of his damage would be the cost of the ditch. He claims that he, being lessee, was not under obligation to dig this ditch in the spring of 1909, when his crops which were damaged were first planted. He also contends that, even if the owner of the land should be under such obligation in order to mitigate the damages, the same duty would not have rested upon him, a mere tenant.

Touching the question before us, that is, the duty of the injured party to prevent damage, we make the following quotation from Sutherland on Damages (3 Ed.), sec. 90: "The measure of the duty is such care and diligence as a man of ordinary prudence would use under the circumstances. . . . A lessee is not bound to go to an expenditure of three hundred dollars in constructing a ditch to protect his property from injury resulting from negligence in the construction of a railroad."

Mr. Sutherland, to sustain his announcement of the law relative to the obligation of a lessee to make an expenditure in constructing a ditch, cites the case of *Galveston, H. & S. A. Ry. Co.* v. *Borsky*, 2 Tex. Civ. App. 545, 21 S. W. 1011. We find that the following is decided in the case cited: "Though it is 'the duty of a party to protect himself from the injurious consequences of the wrongful act of another, if he can do so by ordinary effort and care or at moderate expenses,' such rule has no application in an action for damages against a railroad for the destruction of plaintiff's crops by overflow, from the defective construction of defendant's roadbed, where the injury could only have been prevented by the digging of a ditch at a cost of three hundred dollars; the digging of a ditch at such cost not being 'ordinary effort and cost' or a 'moderate expense.'" In delivering the opinion of the court in the Borsky case, Pleasants, J., said: "The appellee was not required to make such an expenditure to protect his property from injury resulting from the alleged negligence of appellant. Besides, the evi-

dence discloses that the appellee is not the owner, but the lessee, of the land upon which he was farming, and it is doubtful whether under any circumstances a lessee would be required to cut a ditch such as the one proposed for his protection against the wrongful act of another. A tenant under an ordinary lease would have no authority to make such change or alteration in the property of his landlord.''

The Texas court of civil appeals, on the same day that it decided the Borsky case, also rendered a decision in another case, *Railroad v. Ryan*, 21 S. W. 1013, in which it appears to make a distinction between the duty of the owner of the land and a tenant under circumstances like those in the present case. We take the following from the opinion in the Ryan case: "In the Borsky case he was a tenant, and in this case the plaintiff appears to be the owner of the land.''

In the case of *Railroad v. Horan*, 23 Ill. App. 259, it was held that it was not the duty of the plaintiff to mitigate the injury by digging a ditch to drain off the water where the railroad company obstructed the natural flow of surface water. We take the following from the opinion in that case: "The appellee was a mere tenant, and had no right to dig such a ditch, and was not compelled to do so.''

Applying the law to the facts of this case, we believe that the trial court erred in giving instruction number 2 for defendant, and in confining the damage to be recovered by Mr. Sultan to the amount which it would have been necessary to expend during the spring of 1909 in constructing a ditch to drain the water impounded by the railroad embankment into Jones Bayou.

Mr. Sultan, as lessee, was not bound to make an expenditure of one hundred dollars in digging a ditch through the land of his landlord in order to protect the crops which he expected to raise on the land from damage re-

sulting from negligence in the construction of the railroad embankment.

It is argued by counsel for the railroad company that the duty owing by Mr. Sultan to prevent damage is taken out of the rule that a tenant under an ordinary lease has no authority to make a change or alteration in the property of his landlord by constructing a ditch through it by reason of a provision in the contract of lease under which he held the land. This stipulation reads: "The party of the second part [Sultan] further agrees to keep all ditches open and ditch banks clean." We do not see any force in counsel's argument. It is clear that the stipulation in the lease agreement refers to ditches already constructed on the land. We do not find anything in the agreement to authorize Mr. Sultan to dig new ditches. Without the authority from his landlord, we do not see that he had the right to construct a new ditch through the land.

Counsel for cross-appellant, Mr. Sultan, contend that, as there was only a plea of general issue filed, and no notice given of special matter thereunder, that testimony relating to mitigation of damages by digging the ditch was not admissible. This has been settled by the case of *Grayson* v. *Brooks, Neely & Co.,* 64 Miss. 410, 1 So. 482, wherein Judge COOPER, delivering the opinion of the court, said: "Matters in mitigation of damages merely should be given in evidence under the general issue, for by that plea the defendant puts upon the plaintiff not only the proof of his injury but its extent."

Affirmed on direct appeal, and reversed on cross appeal, and remanded for trial as to amount of damages.

COOK, J., takes no part in this decision.

*Affirmed on direct appeal; reversed on cross appeal; remanded as to amount of damages.*