## CHICAGO, M. & G. R. CO. et al. v. WHEELER

Western Section. July 11, 1925.

No petition for Certiorari was filed.

1. **Trial. Introduction of testimony by defendant waives any exception to refusal to direct verdict at close of plaintiff's case.**
   Any error in denying a directed verdict on defendant's motion at the close of plaintiff's proof is waived where the defendant introduces evidence.

2. **Waters and water courses. Evidence on question whether overflow was caused by railroad trestle held to sustain verdict for plaintiff.**
   In an action against a railroad for damages to crops by overflow of ditch evidence held to support verdict of the jury that overflow was caused by defendant's trestle.

3. **Appeal and error. Verdict of jury binding on appeal if supported by material evidence.**
   Findings of the jury on disputed issues of fact are binding on the appellate court, if supported by material evidence.

4. **Trial. Not error to refuse instructions covered by court's charge.**
   In action for damages to crops by overflow of ditch caused by improper rebuilding of railroad trestle, refusal of instructions that railroad was not required to guard against extraordinary and unprecedented rainfalls, or against inevitable accident, held not error, in view of instructions adequately presenting matter.

5. **Water and water courses. Instruction on liability of railroad for overflow caused by drifts accumulating against trestle held erroneous.**
   In action for damages for flooding of plaintiff's crops by overflow of ditch alleged to have been caused by rebuilding of railroad trestle, instruction that defendant was not liable if overflow was caused by drifts that became lodged against piling of trestle was properly refused as not stating correct rule of law.

6. **Trial. Refusal of instruction covered by court's charge not erroneous.**
   In action for damages to plaintiff's crops by overflow of ditch caused by rebuilding of railroad trestle, refusal of instruction that railroad was not liable if plaintiff permitted ditch to become obstructed was not error, where court charged that defendant was not liable if flooding of plaintiff's crops was produced by any cause other than change to defendant's trestle.

7. **Waters and water courses. Railroad liable only for such proportion of damages as it caused.**
   In an action for damages to plaintiff's crops by overflow of ditch caused by rebuilding a railroad trestle an instruction which relieved railroad of all liability if plaintiff's negligence caused any of the damage was properly refused and jury correctly instructed that if other causes contributed to plaintiff's injury defendant was liable only for such proportion as was caused by rebuilding of trestle.

8. **Trial. Not error to refuse instruction covered by other instructions.**
   In action for damages to plaintiff's crops by overflow of ditch caused by rebuilding railroad trestle, refusal of an instruction that burden rests on plaintiff to prove defendant's trestle caused the overflow and the amount of his damages was not erroneous when it was covered in other instructions.

9. **Damages. Lessee not obliged to construct ditch to minimize damages caused by railroad trestle.**

The lessee of a farm is under no obligation to dig a ditch to protect his crops from waters obstructed by a railroad trestle in order to minimize the injury, notwithstanding obligation of lease to keep ditches open and banks clean.

10. **Appeal and error. Exclusion of cumulative testimony held not reversible error.**

In an action against railroad for damages to plaintiff's crops by overflow of ditch caused by rebuilding railroad trestle, the exclusion of testimony as to relative amount of space for passage of water left by builders was not reversible error, where the dimensions of old and new trestle were otherwise adequately shown, so that the jury could readily determine the matter inquired about.

11. **Water and water courses. Railroad liable for overflow caused by drifts accumulating against its trestle.**

A railroad which so negligently constructs a trestle across a ditch that drifts will accumulate against the piling, and by holding the water back cause it to overflow and injure crops, will be liable for the damages caused thereby, especially where such drifts are permitted to remain for unreasonable time.

12. **Justices of the peace. Irregularities in warrant cured by verdict.**

Any irregularities in a justice of the peace warrant, which is not void, are cured by the verdict.

13. **Damages. Measure of damages for destruction of growing crops.**

The measure of damages for injury to, or destruction of, growing crops, is their value at the time of injury, or destruction, and not what they would have been worth in the opinion of the jury if allowed to mature.

14. **Damages. Evidence. Testimony of value of crops held to sustain verdict.**

In an action for damages to plaintiff's crops by overflow of ditch, testimony that corn washed away was replanted, and as to the cost of replanting, and testimony as to the worth of crops standing just before second flood and its worth after the flood, held to sufficiently support verdict assessing damages.

Appeal in Error from Circuit Court, Dyer County; Hon. Robert A. Elkins, Judge.

Affirmed and remanded.

Draper & Rice, of Dyersburg, for plaintiffs in error.

R. D. Chambers, of Dyersburg, for defendant in error.

CLARK, J. The plaintiff below, Jim Wheeler, sued the defendants below, Chicago, Memphis & Gulf Railroad Company and Illinois Central Railroad Company in an action for damages for wrongfully causing the flooding and washing of his crops.

The case originated before a justice of the peace and was appealed from his judgment to the circuit court of Dyer county, where it was tried to the circuit judge and a jury and resulted in a verdict in favor of plaintiff for $50. Defendant's motion for a new trial having been overruled, judgment was entered against it for the amount of the verdict, together with the cost of the cause, and de-

fendants prayed, were granted, and have perfected, an appeal to this court, and have filed 14 assignments of error.

The second assignment is as follows:

"The court erred in overruling and disallowing the motion of defendants for a directed verdict made at the close of the plaintiff's proof in chief."

This assignment is overruled, for the reason that it is well settled that where a defendant, after denial of his motion for a directed verdict made at the close of plaintiff's proof, introduces evidence, he waives any error in the court's ruling, and must renew his motion at the close of all the evidence, if he expects to rely thereon. John Gerber Co. v. Mrs. L. D. Smith, 150 Tenn. 255, 263 S. W. 974.

Through the first assignment it is insisted that there is no material evidence in the record to support the verdict of the jury, and through the third assignment it is insisted that the trial judge erred in overruling defendant's motion for a directed verdict in its behalf made at the close of all the evidence.

We will dispose of these assignments together and, to do so, makes necessary a statement of the material facts of the case. The defendants are the owners of a railroad that passes through Dyer county and other portions of the state of Tennessee and other states. There is a certain tract of land lying north of said railroad and west of a ditch to be hereinafter referred to and which tract of land during the years 1923 and 1924 was leased and cultivated by the plaintiff, Jim Wheeler. When the defendants constructed said line of railroad, which was about 17 or 18 years ago, they constructed a bridge or trestle over said ditch. Said trestle was composed of one bent about 14 feet long and this bent was supported by piles driven in the sides of the embankment where the ditch passed between. Said trestle remained in that condition (probably some repairs were made on it from time to time) until the early part of April, 1923, and from the date of the construction of the trestle to the date last mentioned the water from said ditch passed under said trestle free from obstruction and did not overflow the land in question or injure the crops growing thereon.

In the early part of April, 1923, the defendants reconstructed said trestle. As reconstructed it was composed of two bents, each 14 feet long and supported by a row of piles driven in the center of the ditch. The old piles that had supported the original trestle were cut off at a point some distance above the ground, and the stumps were permitted to remain standing in the ditch until some time in October, 1923.

In April, 1923, after the reconstruction of the trestle, and again in July of the same year, heavy rains fell. Some of the witnesses

state rather indirectly that the rains were "unprecedented," but it is clear from the record, taking it as a whole, that they did not mean to say that no similar rains had ever fallen in that section.

The April rain damaged plaintiff's corn that was then up, had been worked, and was in a good state of cultivation for that season of the year. The July rain damaged plaintiff's cotton and corn also. The record shows that, prior to that time, the seasons had been good, plaintiff had worked his crop well and it was in a good state of cultivation. Some of the corn injured in April had to be replanted and some of the cotton was entirely washed away in July and some of the corn injured to such an extent that it made very little. It is for these injuries that plaintiff sued.

As stated, for the 15 or 16 years during which the railroad had been constructed prior to the reconstruction of the trestle in 1923 said ditch had never overflowed sufficiently to damage any of the crops growing near same. The record also shows that the new piling driven in the center of the ditch and the stumps of the old piling left in the ditch caused drifts to accumulate and obstructed the water and this would increase the overflow.

Defendants undertook to and did show that at one place in the ditch north of the trestle, and on or near the land cultivated by plaintiff, one or two trees were growing in the ditch and there were certain vines and vegetation growing in same. But, as we understand the record, the main break in the side of the ditch and through which the water came that caused the material damage to plaintiff's crop was between the trees and the trestle, so that the trees would tend to minimize rather than aggravate the overflow. In any event, it was a question for the jury as to whether the overflow was caused by the trestle or by other obstructions in the ditch. There is in the record material evidence that it was caused by the trestle, and, the jury having accepted that view of the matter, we are bound by its findings. In the case of Carriger v. Railroad Co., 7 Lea (75 Tenn.,) 393, it is said:

"It was the duty of the defendant in the construction of its roadbed to provide against the known habits of these streams. It is no defense for it to say that it was only in extraordinary times the injuries now complained of could result. The rises in the water had for all time occurred at intervals before the building of the road, and it was to be conclusively presumed they would occur afterwards from similar causes.

"In Addison on Torts, Wood's Edition, p. 95, it is said: 'Land cannot be cultivated or enjoyed unless the springs which rise on the surface and the rains that fall thereon be allowed to make their escape through the adjoining and neighboring lands. All lands, therefore, are of necessity burdened with the

servitude of receiving and discharging all waters which flow down to them from lands on a higher level, and if the owner or occupier of the lower lands interposes artificial impediments in the way of the natural flow of the water through or across his lands, and by so doing causes the higher lands to be flooded, he is responsible in damages for infringing the natural right of the possessor of such higher land to the natural outfall and drainage of the soil, unless he has gained a right to pen back water by contract, grant, or prescription.' "

See, also Railway Co. v. Higdon, 111 Tenn., 121, 76 S. W., 895; C., N. O. & T. P. Ry. Co. v. Roddy et al., 132 Tenn., 568, 179 S. W., 143, L. R. A. 1916E, 974, and notes to the case of Avery v. Vermont Electric Co., 59 L. R. A., 863.

We think there is in the record material evidence to support the verdict of the jury and the first and third assignments are overruled.

The fourth, fifth, and sixth assignments, respectively, are as follows:

## IV.

"The court erred in refusing and declining to give in charge to the jury the defendant's first special request, which is as follows, to-wit:

"I charge you that the measure of diligence required of railroad companies in the maintenance of bridges and culverts in that the character and size of the stream, the extent and situation of the agricultural land about it, and the nature of the rainfalls and floods affecting it, shall be ascertained and provided for as far as the exercise of ordinary foresight, care, and skill can accomplish them; but there is no requirement that said railroad company shall guard against or shall foresee recurrence of cyclones, cloudbursts, unprecedented floods and rains, and the like, though it is known that they have many times happened, and therefore, if you find that the culvert or bridge in this case was of a sufficient capacity to carry off safely all ordinary accumulations of water, and that the railroad constructed and maintained the same with due care, and frequently inspected the same, and that it appeared to be amply sufficient for all purposes, then, the court charges you that the said company would not be liable for any injury which may have been suffered by the plaintiff resulting from such extaordinary or unprecedented floods or rains as overtaxed the capacity of said culvert and caused the flooding and washing of the plaintiff's lands and crops complained of herein."

## V.

"The court erred in failing and refusing to give in charge to the jury the second special request of defendants, to-wit:

"If you find from the evidence that the defendant or defendants were without negligence in the construction and maintenance of the culvert, and that the injuries to the plaintiff complained of herein were the result of an inevitable accident and such that no human foresight could avert, then the defendants would not be liable, and your verdict must be in favor of the defendants."

## VI.

"The court erred in failing and refusing to give in charge to the jury the third special request of the defendants, to-wit:

"I charge you that if you find from the evidence that the injuries complained of by plaintiff in this suit were the direct and proximate result of the rain or series of rains which were so heavy, unusual, and extraordinary that they could not have been reasonably expected or anticipated by defendants railroad companies, and that such unusual and extraordinary rains and floods were the cause of the accumulating of drift at the bridge and the breaking over of the water out of the ditch or creek at various points above the said bridge and the consequent flooding and washing and damaging of plaintiff's land and crops, and that the defendant maintained their said track and bridge in good condition, and that the same were safe and suitable and sufficient for all emergencies which could have been reasonably anticipated by them, then under these circumstances I charge you that the defendants would not be liable, and your verdict will be for the defendants."

On the subject above referred to in these assignments, the trial judge charged the jury as follows:

"If you find that the defendants in rebuilding their trestle provided ample opening to carry ordinary rainfall, and if you further find that the rains causing the overflow of plaintiff's crops were unprecedented, that is, such as could not have been reasonably anticipated by a prudent person skilled in the work of constructing railroads across such streams as the one in question, then it would be the act of God, for which the defendants would not be liable."

It is true that the request copied into the fourth assignment was taken almost, if not altogether, from the language used by the Supreme Court in the case of Railroad v. Kuhn, 107 Tenn., 106, 64 S. W., 202, and is a correct statement of the law as appliable to the facts of that case; but we think that the language used by the trial judge and above copied is applicable to the facts of the instant case, and was as strong in defendant's favor as the facts would justify.

The fourth, fifth, and sixth assignments are overruled.

The seventh assignment is as follows:

"The court erred in failing and refusing to give in charge to the jury the fourth special request of the defendants, to-wit:

"If you find from the evidence that the plaintiff himself permitted the ditch above the bridge of the defendants and where it runs through or by his own lands to. become stopped up or choked with trees, underbrush, willows, logs, or other obstructions so that, when heavy rains fell, the water could not pass freely and safely down said ditch, but would break out of the same and overflow the lands on both sides of said ditch, and also that said logs, brush, and other obstructions would be washed down said ditch so that it would form into and constitute a drift lodged against the trestle or bridge of the defendants; and if you further find that as a result of this conduct on the part of the plaintiff, that during the heavy rains or floods which fell during the spring or summer of the year 1923, if you find that such rains or floods occurred, said drifts did form and collect on the bridge or trestle of the defendants, and that the waters did break out and over the banks of said ditch and overflow and wash the plaintiff's land and crops and damage and injure them, then I charge you that the plaintiff cannot recover, and that your verdict in this case must be for the defendants."

On this subject, the trial judge said to the jury:

"If the flooding of plaintiff's crops was produced by any cause other than the change in the trestle, then there can be no recovery. If the ditch was obstructed either above or below the said trestle by trees, logs, vines, or other material, and the plaintiff's crops were caused to overflow by these obstructions, if any there were, and not by the reconstruction of the trestle, then there can be no recovery."

The charge of the trial judge on the subject referred to in the assignment under consideration was more favorable to defendants than was the request which the trial judge refused, in that the trial judge told the jury that, if the flooding of plaintiff's crops was produced by any cause other than the change in the trestle, then plaintiff could not recover, while the request was limited to obstructions that plaintiff himself had permitted to grow up or be placed in the ditch. We are also of opinion that the request did not state a correct proposition of law in that the effort was to relieve the defendants from liability for overflows caused by drifts that became lodged against the piling of the trestle and the stumps of the old piling. The seventh assignment is overruled.

The eighth and thirteenth assignments, respectively, are as follows:

## VIII.

"The court erred in refusing to give in charge to the jury the fifth special request of the defendants, to-wit:

"If you find that the defendants, or either of them, were guilty of negligence which was the direct and proximate cause of the flooding and washing of the plaintiff's land and crops, either in the construction of the bridge or trestle, or in the maintenance of the same, or in the placing of the piling in the center of the bed of the ditch, still if you further find that the plaintiff himself was guilty of negligence in failing to clean out the ditch, and in permitting the same to become choked up with trees, logs, bushes, or other obstructions, and that the said negligence of the plaintiff contributed directly and proximately to the overflowing and flooding and washing of the plaintiff's land and crops, then I charge you that the plaintiff cannot recover, and your verdict will be for the defendants: and I charge you that this is true no matter how slight said contributory negligence of the plaintiff may be."

## XIII.

"The court erred in the following portions of his charge to the jury, to-wit:

"If the plaintiff's crops were destroyed or injured by water flowing thereon, and the trestle as rebuilt on defendants' road by obstructing the natural overflow of the water contributed to such injury or destruction, and, if the same was caused in part by water falling and running over said crops regardless of said trestle, then the defendants would be liable for only such proportion of said injury as was caused by said trestle as rebuilt. If said injury to said crops was wholly caused by water falling and running over said crop regardless of the change made in said trestle, then there can be no recovery."

It is seen that the insistence made through these assignments is that if a part of the damage to plaintiff's crops was caused by obstructions in the ditch other than the trestle, and that the remainder of the damage was caused by the trestle obstructing the water, then plaintiff cannot recover. In support of these assignments, defendants cite Railway Co. v. Hull, 88 Tenn., 33, 12 S. W., 419, and Railway Co. v. Aiken, 89 Tenn., 245, 14 S. W. 1082. Neither of these cases is in point. They are both personal injury cases, and the facts as stated in the opinions have no application to the facts of the case at bar.

If there had been in the ditch a log that caused the water to overflow to the extent that it damaged plaintiff's crop $10, and had it not been for the trestle the crop would not have been damaged to any greater extent, but because of the trestle, the crop was damaged in the additional amount of $40, and if this appeared from the proof, no reason occurs to us (nothing else appearing) why plaintiff would not be entitled to recover from defendants the amount of $40, and able counsel has cited no authority to the contrary, and we know of none. The eighth and thirteenth assignments are overruled.

The ninth assignment is as follows:

"The court erred in failing and refusing to give in charge to the jury defendants' sixth special request, which is as follows, to-wit:

"I charge you that unless you find with reasonable certainty what amount of damages, if any, the plaintiff is entitled to recover by reason of the placing of the piling in the stream, as is claimed by the plaintiff as distinguished from any damages, if any, which may have been caused to the plaintiff's land and crops by reason of his having permitted the ditch to become obstructed. if he did so, then the plaintiff cannot recover, and your verdict will be for the defendant."

On the subject referred to in this assignment, the trial judge charged the jury as follows:

"The burden rests upon the plaintiff to establish the facts and circumstances necessary to entitle him to recover by the preponderance of the testimony; that is, the burden is upon plaintiff to prove that, by the reconstruction of their trestle at the place in question, the defendants wrongfully caused the washing and flooding of his crops, and the amount of his damage."

We think the matter presented by this assignment was sufficiently covered by the general charge, and the assignment is overruled.

The tenth asssignment is as follows:

"The court erred in failing and refusing to give in charge to the jury the defendants" seventh special request, which is as follows, to-wit:

"It is the duty of every person who is claiming damages to mitigate or lessen his damages in every reasonable way, and if you find that the plaintiff by permitting and allowing the ditch along and by his lands to become choked and obstructed so that the free and easy flow of the water down the same was impeded, hindered, and obstructed, and that by the expenditure of comparatively small money, and labor, he could have cleaned out this ditch and could have lessened the overflow and flooding of his crops, then I charge you that it was his duty to do so,

and if you further find that the plaintiff neglected and failed to do so, and that his damages were thereby increased and aggravated, then the plaintiff cannot recover in this case except the amount of the said money and labor necessary to mitigate said damage as aforesaid, and, if there is no evidence on this subject before you upon which you can base a recovery for the plaintiff, then the plaintiff must fail, and your verdict will be for the defendant in this case.''

The exact question presented by this assignment was decided by the Supreme Court of Mississippi in the case of Yazoo & Mississippi Valley Railroad Co. v. Sultan, 106 Miss., 373, 63 So., 672, 49 L. R. A. (N. S.), 760, and it was held that a lessee of a farm is under no obligation to dig a ditch to protect his crops, from waters obstructed by a railroad embankment, in order to minimize the injury; that an obligation imposed by a lease upon a tenant to keep all ditches open and the ditch banks clean did not require him to construct a ditch to protect his crops from waters, the flow of which was obstructed by a railroad embankment. See, also, Annotations to this case. We agree with the holding of the Mississippi court, and the tenth assignment is overruled.

The eleventh assignment is as follows:

''The court erred in refusing to permit the witness J. M. Russell to testify to the jury as follows:

Q. Tell the jury whether or not when you got through building the new bridge there was any more space for the water to pass through than there was in the old one?

''Mr. Chambers: I object to that.

''Mr. Draper: I think I have a right to ask him that.

''By the court: I will sustain the exception.

''Mr. Draper: I expect to Honor's ruling, and ask that he be permitted to whisper his answer to the stenographer so that I can get it in the record.

''By the court: Well.''

Answer whispered to the stenographer: ''There was more space.''

We think there would have been no error in the action of the trial judge had he permitted the witness to answer the question asked him, and we are also of opinion that there is no reversible error in his action in sustaining plaintiff's objection to the testimony. · The dimensions of the trestle, the plan of construction, the place where the piles were driven, as well as the places where the stumps of the old piles had been left, had been testified to. The dimensions of the old trestle had also been given and the testimony shows where the piles of the old trestle were driven. The jury could make the comparison and say whether there was more space

for the water to pass under the new trestle then there was under the old. The eleventh assignment is overruled.

The twelfth assignment is as follows:

"The court erred in the following portion of his charge to the jury, to wit:

"If you find from the preponderance of the testimony that the defendants rebuilt or reconstructed their trestle near the plaintiff's growing crop and drove piling in the bed of the channel or ditch, and that between that time and October 5, 1923, during hard rains the water was obstructed by the piling so driven, or by the accumulation of the drift caught by said piling, and thereby caused to overflow plaintiff's growing crops and injuring them, then it would be your duty to find for the plaintiff."

This assignment is directed at that portion of the court's charge which makes the railroad company liable for injury caused to plaintiff's crops, by an overflow caused by drifts that accumulated against the piling and stumps of piling in the new trestle. If defendants constructed their trestle in such a way that drifts would accumulate against the piling, and if the drifts so accumulated held the water back and caused it to overflow and injure plaintiff's crops, and if the defendants were negligent in so constructing the trestle, we think defendants would be liable for the damage caused by the accumulation of drifts. See cases cited in note to Avery v. Vermont Electric Co., 59 L. R. A., 863. Especially is this true if the drifts were permitted to remain under the trestle for an unreasonable length of time. The twelfth assignment is overruled.

We have already disposed of the thirteenth assignment. Through the fourteenth assignment it is insisted that the trial judge erred in overruling. defendants' motion in arrest of judgment, upon the ground that the warrant in the case is void in that it failed to state a cause of action. We think this assignment must also be overruled.

The defendants were notified to appear and answer plaintiff "in an action for damages for wrongfully causing the washing and flooding of his crops under $500." The warrant is not void. Not being void, any irregularities were cured by the verdict. Memphis Street Railway Co. v. Flood, 122 Tenn., 56, 113 S. W., 384; Nichols v. Lebanon & Hartsville Turnpike Co., 128 Tenn., 541, 162 S. W., 588; N. C. & St. L. Ry. Co. v. Williamson, 137 Tenn., 152, 192 S. W., 385.

It is also insisted that no evidence was introduced showing plaintiff's damage, when said evidence is measured by the correct rule, and it is said that the correct rule as to the measure of damages in a case like this is correctly stated in L. & N. Ry. Co. v. Channell, 2 Appeal Cases, 154. We think the rule is correctly stated in that case

where it is said that the measure of damages for injury to or destruction of growing crops is their value at the time of injury or destruction, and not what they, in the opinion of the jury, would have been worth if allowed to mature. But we find that evidence of the value of the crops destroyed, when measured by this rule, was introduced. As to the corn washed away by the first flood, plaintiff testified that he replanted the ground, and also as to the value of his services and the cost of the seed used. in replanting. As to the corn .and cotton damaged by the second flood, there is in the record testimony as to what it was worth-standing in the field just before the flood, and what it was worth after the flood, Record pp. 18, 19, 22, and 23. We do not think this testimony was destroyed on cross-examination. Similar testimony was given by another witness. See, also, Railroad v. Higdon, 111 Tenn., 121, 76 S. W., 895; Carriger v. Railroad, 7 Lea (75 Tenn.), 388.

This disposes of all of the assignments of error. They are all overruled. The judgment of the trial court is affirmed. The plaintiff will recover of the defendants the judgment of the trial court with proper interest. He will also recover of defendants and the sureties on their cost bond the cost of the appeal.

Affirmed and remanded.·

Heiskell and Owen, JJ., concur.